[Archer v. People's Savings Bank.]

# Archer *v.* People's Savings Bank.

*Garnishment on Judgment; Contest of Garnishee's Answer.*

1. *What demands are reached by garnishment.*—If a garnishee is indebted to the defendant at the time of the service of the garnishment, or at the time of making answer, or at any intervening period; or, if there is then a valid and binding contract existing between them, by which an indebtedness would accrue in the future (Code, §§ 2945-6); in either case, if the debtor himself could maintain an action of debt or *indebitatus assumpsit* in his own name, the demand is subject to the garnishment, and the creditor's lien attaches from the service of the writ or summons on the garnishee.

2. *Same; subsequent dealings between garnishee and debtor.*—Payments made by the garnishee to the judgment debtor after the service of the garnishment, are made at his own risk, and avail nothing as against the plaintiff in garnishment; and if there is a subsisting contract between them for a definite time, which by its terms is not dissolvable at the option of one or both of them, no subsequent change or modification thereof, though valid as between themselves, can affect the intervening rights of the attaching creditor.

3. *Same; contract of employment, with stipulation for payment in advance.*—It is competent for parties, when contracting for personal services to be rendered by one for the other, to stipulate for the payment of wages in advance, weekly, monthly, or for any other reasonable time; and such agreement being *bona fide*, and free from fraudulent collusion, it will be upheld against the claims of attaching creditors, so long as payments are made in advance as stipulated; but, if any installment remains uncollected, though but for a single day, it becomes a debt, and subject to garnishment.

4. *Term of office of bank president, under by-laws.*—Under the by laws of an incorporated savings bank, requiring an annual election of directors, and further providing that the directors " shall elect from their number a president, vice-president, and such other assistants as are necessary, said assistants to hold office at the pleasure of the directory," the president does not hold his office at the pleasure of the directors.

5. *Set-off in favor of garnishee.*—The debtor of an incorporated savings bank being elected its president at an annual salary, payable weekly or monthly in advance, and so paid until after the service of a garnishment on the bank, there is an implied agreement that the debt shall not be set off against the wages, and it can not be claimed as a set-off against the plaintiff in garnishment.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

The appellant in this case, Thos. J. Archer, recovered a judgment in the Circuit Court of Mobile, on the 26th May, 1885, against Baker, Lawler & Co., a partnership of which J. W. Whiting was a member; and on the 17th July, 1885, he sued out a garnishment on it against the People's Savings

Bank of Mobile, of which said Whiting was president, seeking to subject a supposed indebtedness of the bank to him. On the 16th December, 1885, an answer was filed by the garnishee, verified by the affidavit of its cashier, stating that on the 20th July, 1885, the day on which the garnishment was served, Whiting, as a member of the firm of Baker, Lawler & Co., was indebted to the bank in a large sum; that he was elected president of .the bank on the 1st February, 1884, and re-elected on the 1st July,.1885, to hold office until the 1st July, 1885, at a salary of $200 per month; that "there was no contract between him and the bank as to whether his salary should or should not be subject to the satisfaction of said indebtedness, but the bank has not attempted to subject it, or to retain any part thereof on account of said salary; that when the garnishment was served, he had already drawn his salary in advance up to the 1st August, 1885, and he has ever since drawn his salary in advance, and the bank has at no time been indebted to him on account thereof;" and that payment was so made in advance pursuant to the terms of a written contract entered into between him and the bank on the. 31st July, 1885, under authority of a resolution adopted by the board of directors on that day. A copy of the contract, and also of the resolution authorizing it, was made an exhibit to the answer; the words of the contract being, "that the said bank, for and in consideration of the services to be rendered to it by said Whiting as its president, does hereby promise and agree that it will pay his salary as such president weekly in advance, so long as he may hold said office and faithfully perform the duties thereof; *provided*, that said bank may at any time cancel this contract, upon one month's notice to said Whiting." On these facts, the garnishee insisted, as a matter of law, that it was not indebted to said Whiting on account of his salary, but, if it should be held liable, claimed the right to set off his said indebtedness to the bank.

On a subsequent day of the term, the plaintiff having required the garnishee to "answer orally on the first day of the next term," an order to that effect was entered; and the cause was continued, from term to term, "for further answer of garnishee," until the June term, 1888, when an answer in writing was filed to "interrogatories propounded by plaintiff to said garnishee, under an agreement to that effect, for the purpose of completing its former answer." This answer alleged that the bank was incorporated, under the general

statutes, in April, 1872; that the articles of incorporation "made no provision for the election of a president, nor for his term of office;" that by-laws were adopted, which remained unchanged from April, 1874; and copies of the first and third by-laws were set out. The first by-law provided for an annual meeting of stockholders "for the election of seven directors, who shall hold their office for one year, or until their successors are appointed;" and the third was in these words: "The directors shall elect from their number a president, vice-president, and such other assistants as are necessary; said assistants to hold their office at the pleasure of the directory. The directors shall fix all salaries, and require such bonds for the faithful performance of duties as they may deem best."

The answer contained, also, these allegations : "The first meeting of stockholders for the election of directors, after the adoption of these by-laws, was held on the 1st July, 1875, and such meeting has been held on the 1st or 2d of July each year since. At each of said regular meetings, a board of directors has been elected, to serve for one year, or until the election of their successors; and on the day of their election, or the next day, said board has elected a president. The minutes do not state the term for which any president has been elected. As matter of fact, the president so elected has always served until the next annual election, unless he resigned earlier. Peter Starke was elected president on the 2d July, 1883, and resigned February 1st, 1884. J. W. Whiting was elected president on the 5th February, 1884, and was re-elected July 1st, 1884, July 1st, 1885, and July 1st, 1886. At no one of the meetings at which he was so elected was there any discussion or mention of the term for which he was elected. Under his election of February 5th, 1884, he served until July 2d, 1884; and under each election since that time, he has served until his next election. When said Whiting was first elected, the amount and terms of his salary had not been fixed. Mr. Starke had been receiving, as president, an annual salary of $4,000. By resolution of the board of directors adopted 9th February, 1884, the salary of the president was fixed at $200 per month from February 1st, 1884, no provision being made as to time of payment; and no contract had been made with him before that time, as to his salary. When re-elected, July 1st, 1885, no contract was made as to his salary, save that the board of directors on that day adopted

a resolution that all salaries should remain the same.    On his re-election, July 1st, 1886, his salary was increased to $3,000 *per annum*, and upon his re-election July, 1887, it was fixed at $3,000.    At a meeting of the board held November 19th, 1884, he asked the consent of the board to be allowed to draw his salary a week in advance, which was granted by the board.    On the 31st July, 1885, the board adopted a resolution," under which a written contract was signed, as stated in the former answer.    Attached to the answer was an itemized account showing the date and amount of each payment to Whiting, from February 29th, 1884, to June 14th, 1888, the day on which the answer was filed.

On the same day this answer was filed, the plaintiff filed an affidavit of contest, alleging that it was untrue (1) in its denial of any indebtedness to Whiting, and (2) in its denial of the existence of a contract, at the time of the service of the garnishment, under which an indebtedness to him would accrue in the future.    An issue being formed between the parties on this contest, at the next term, the plaintiff read in evidence the original and amended answers of the garnishee, with the papers in the suit, while the garnishee offered no evidence.    The court charged the jury, on request, that they must find for the garnishee, if they believed the evidence. The plaintiff excepted to this charge, and here assigns it as error.

J. LITTLE SMITH, for appellant.—(1.)  The answer of the garnishee shows that Whiting's term of office as president was for twelve months (1 Mor. Corp., §§ 541-5; *Nathan v. Tompkins*, 82 Ala. 447); and there was a necessary implication, in the absence of an express stipulation to the contrary, that the services should be rendered before the compensation was due and payable.    Any change or modification of that existing contract, after the service of the garnishment, was of no effect as against the plaintiff, and the garnishee can claim no credit for payments subsequently made, though in advance.—*Railroad Co. v. Falkner*, 49 Ala. 117; *Skipper v. Foster*, 29 Ala. 330.    (2.)  If the subsequent contract, or change in the existing contract, can prevail at all against the plaintiff, it is only for payments made in accordance with its terms—that is, strictly in advance; and any installment not so made became at once a debt, for which Whiting might have maintained an action, and which is subject to the garnishment.    The exhibit to the answer shows several thousand

[Archer v. People's Savings Bank.]

dollars thus allowed to accrue without pre-payment, and this amount, at least, is subject to the garnishment. (3.) The contract of employment between Whiting and the bank was a waiver of the right of set-off; and the right having been thus waived, as well as by the practical construction of the contract by the parties, it can not prevail against the plaintiff. *Hall v. Magee & Reid,* 27 Ala. 416.

PILLANS, TORREY & HANAW, and CLARKE & WEBB, *contra.* (1.) If the answer of the garnishee admits an indebtedness, or if the law raises an implication of indebtedness from the facts stated, the plaintiff ought to have asked for judgment against the garnishee on the answer. Instead of doing this, he contested the answer, and yet introduced no evidence *aliunde* in support of his contest. He has thus estopped himself from denying the allegations of the answer, and all parts of it are evidence against him.—2 Wade on Attachments, § 381; Wood's Pr. Ev. 181, 589; 2 Herman on Estoppel, 817-18; *Price v. Mazange,* 31 Ala. 704; *Callan v. McDaniel,* 72 Ala. 105; *Lawrence v. Insurance Company,* 11 Johns. 289. (2.) But the answer shows no indebtedness or claim which can be reached by the plaintiff's garnishment.—*Alexander v. Pollock,* 72 Ala. 137; *Teeter v. Williams,* 3 B. Monroe, 562. (3.) If any indebtedness exists, it is subject to the claim of set-off.—*Powell v. Sammons,* 31 Ala. 552; *Self v. Kirkland,* 24 Ala. 277; *Price v. Masterson,* 35 Ala. 483; 67 Iowa, 42; 2 Ala. 349.

SOMERVILLE, J.—If the garnishee, at the time of service of the garnishment, or at the time of making the answer, or at any time intervening between these two periods, was indebted to the defendant Whiting, or if there was then existing a valid and binding contract by which such indebtedness would accrue in the future, this debt, unless exempted from legal process, was subject to garnishment, and the garnishing creditor would obtain a lien on it from the time of the service of the summons on the garnishee.—Code, 1876, §§ 3268-3269; Code, 1886, §§ 2945-2946. The test must be, as uniformly and many times settled, whether the bank, as garnishee, owed the defendant such a money demand as could justly have been the basis of a recovery in an action of debt, or *indebtitatus assumpsit.*

If such a contract existed for a definite time, not by its terms dissolvable at the pleasure of one or both parties, it is

perfectly manifest that no change or modification could be made in the terms of such contract, so as in any manner to destroy the acquired lien of the garnishing creditor, or otherwise prejudice his rights.—*Fowler v. Williams*, 52 Ala. 16; Waples on Attach. & Garnishment, 365. And if any part of the garnished debt was paid by the garnishee to the debtor in attachment, during the pendency of the garnishment proceeding, such payment was at the risk of the garnishee, and can avail nothing against the garnishing creditor, if he is ultimately held liable on his answer.—*Skipper v. Foster*, 29 Ala. 330; Drake on Attach. (6th Ed.), §§ 452-453.

It is perfectly competent for an employer to stipulate with an employee, by *bona fide* agreement, that he will pay his wages weekly, or monthly, or for any other reasonable time, in *advance*; and such agreement, when free from fraudulent collusion, will be upheld by the court. And so long as these payments are made in advance, no debt can accrue for wages or salary due to such employee; and hence the employer can not be held liable as garnishee, under such state of facts. *Alexander v. Pollock & Co.*, 72 Ala. 137; *Callaghan v. Pocassett Man. Co.*, 119 Mass. 173; *Worthington v. Jones*, 23 Vt. 546.

The questions arising in the present case can be solved by the proper application of the foregoing principles.

Taking the facts as set out in the garnishee's answer as *prima facie* correct, it is a fair inference from all the evidence, that the implied agreement between Whiting and the bank was, that after his election on July 1st, 1885, as president of that institution, he was to be employed for the period of one year, at an annual salary of $3,000, with the privilege of drawing such salary by the week, and each week *in advance*. We do not construe by-law numbered three in the record, to have the effect of rendering the office of president a position held at the mere pleasure of the board. It is only "assistants" who might be employed to aid the president in carrying on the business of the bank, who are declared to hold their positions at the pleasure of the board. The use of the word "other," in describing "assistants," means no more than other persons, employed as assistants to the president and vice-president. There is no room here for application of the rule of construction, that general words are to be restrained to things of the same kind with those particularized, under the principle of *ejusdem generis*.

The memorandum entered on the minutes of the board of

directors, on November 19th, 1884, to the effect that Whiting had asked the consent of the board to be allowed "to draw his salary a week in advance," which was granted, was competent evidence of the fact of mutual assent to this feature of the contract; and having been made *before* the service of the writ of garnishment, which was on July 20th, 1885, would prevail against the lien of such writ, provided the installments of the salary were actually collected *in advance*. The privilege of so collecting, in other words, must have been asserted before a debt accrued. But, if allowed to remain uncollected until a debt shall have become due, though but for a single day, such debt would at once become subject to the lien of the garnishment. And any subsequent election of the same officer, for another term, would impliedly confer the same privilege as to the exercise of this right, unless the terms of the contract as to the time of collection were changed.

The written contract of employment made between the bank and Whiting, on July 31st, 1885—*after* the service of the garnishment—could not affect the terms of the contract already existing between them, as implied by Whiting's election as president on July 1st, 1885, to the prejudice of the garnishing creditor's rights. That election, as we have seen, was for the term of one year, at a compensation of $3,000 *per annum*, with the implied privilege of drawing such salary in advance, in weekly installments. But there is no reason why this modification might not operate on any subsequent term of Whiting's presidency, after the lapse of the one extending between July 1st, 1885, and July 1st, 1886. It would, unless fraudulent, control the terms of the employment after the last mentioned date.—*Alexander v. Pollock*, 72 Ala. 137, and cases cited; Drake on Attach. (6th Ed.), 594: A contract, as we have said, may lawfully be made to pay wages in advance, and the amount can not be reached by garnishment; for, as has been justly observed, this "would be in effect the attachment and forced sale of the debtor's personal services—condemning him to involuntary servitude for the payment of his debts."—2 Wade on Attachment, §473, p. 295, and cases cited in *note* 15. But the observation again becomes pertinent, that the privilege of collecting his salary in advance would be *waived* by Whiting, unless promptly claimed and exercised by him; and if waived for a single day, so as to create a debt due, the lien of the pending garnishment would at once attach, and the amount thus

[Central Railroad and Banking Co. v. Miles.]

becoming due would presumptively be subject to such lien, so as to cut off the right of payment to the debtor. And we further hold, that no *debt* for weekly services would become due, except in one of the following contingencies: (1) either the services for the given week must have been performed; or (2) the option to draw the amount in advance must have been asserted by a request to pay.

The set-off interposed by the bank, as garnishee, against Whiting, can not, in our judgment, be sustained on the facts. If Whiting had sued the bank for his salary, this set-off would have been no defense, on the ground of an implied agreement by the bank not to claim it. The agreement, as above stated, was to pay an annual salary, and to pay weekly in advance, if desired. And the evidence shows that it was paid, without any consideration of the set-off. The necessary, fair and honest implication is, that the set-off, based as it was on an old debt due by a partnership, of which Whiting was a member, was not to be claimed against this agreed compensation for his services. The very motive which induced its payment in advance, and a fact which would tend to rebut the charge of fraudulent collusion, may have been the implied need of the money for the maintenance of the debtor. *Hall v. Magee*, 27 Ala. 414; Waples on Attach. 367.

It follows from these views, that the Circuit Court erred in giving the charge requested by the garnishee.

Reversed and remanded.