Argued July 19, decided July 25, 1911.

## REID *v.* SAVAGE.

[117 Pac. 306.]

TRUSTS—ESTABLISHMENT—EVIDENCE—SUFFICIENCY.

1. In an action to establish a trust, predicated on a promise of decedent that if plaintiffs would enter into a partnership with him and look after the business he would give them his property, after he was through with it, evidence *held* insufficient to sustain a finding for plaintiffs.

CONTRACTS—MUTUALITY.

2. A writing, reciting that the grantor, in consideration of love and affection and in consideration of performance by the grantees of covenants therein contained, bargained and sold all the property owned by a partnership, composed of the grantor and grantees, to their use, from and after the grantor's death, and in the meantime the grantor should, during his life, retain control of his interest, the grantees thereby covenanting to pay, after the grantor's death, all indebtedness owed by the partnership, was unilateral.

TRUSTS—ESTABLISHMENT—LACHES.

3. Where decedent had entered into a partnership with his son-in-law, and after decedent's death the son-in-law and his wife alleged that decedent had promised them that if the daughter would keep the books of the partnership, and the two would devote themselves to the business, they should have the decedent's property after he was through with it, and they sought to establish a trust therein, but it appeared that the son-in-law had sold his interest and withdrawn from the firm, and that decedent had afterwards sold, first, a half of his interest, and then the remaining interest, and that the son-in-law knew thereof and made no protest or suggestion, and no claim was made until they had received property under the decedent's will, they were barred by laches from asserting a trust.

From Polk: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by G. S. Reid and Linnie M. Reid against Emma L. Savage to establish a trust in favor of plaintiffs, in certain real estate in Polk County, held by defendant.

In the fall of 1897, O. G. Savage and G. S. Reid, a son-in-law of Savage, became partners in the feed business in Salem, under the firm name of Savage & Reid. Reid put $150 in cash into the business, and $500 was borrowed upon the joint account of Savage & Reid, making the whole capital of the firm $650. Reid had no property, but Savage had considerable real estate, which made the firm note good security for the amount borrowed. The original agreement was that the parties should share equally in the profits of the business, but in a short time a bookkeeper was required, and Mrs. Reid entered the store in that capacity. Plaintiffs testified that it was agreed between them and Savage that Mrs. Reid should keep the books without compensation, and

that Savage promised that, at his death or when he was through with the business, he would leave them his half interest therein; that Savage drew money from the business for his personal use, and on his personal account, whenever he chose; that on November 19, 1897, he, without previous consultation with them, presented to them a written contract, saying that was in compliance with the agreement he had made with them, and advising them to have it recorded.

The original contract was not produced, but a certified copy of the reord was offered in evidence, and is as follows:

"This indenture made in duplicate this 7th day of November, A. D. 1897, between O. G. Savage, of the City of Salem, in Marion County, Oregon, of the first part, and G. S. Reid and Linnie M. Reid, his wife, both of the same place, of the second part, witnesseth: That the party of the first part, for and in consideration of the sum of one dollar now paid to him and of the love and affection entertained by him for the parties of the second part, and in further consideration by the performance of the parties of the second part of the covenants hereinafter contained, the party of the first part has bargained and sold and by these presents does bargain and sell unto the parties of the second part all the property, including the stock in trade, book debts, fixtures, etc., now belonging to and owned by the partnership firm of Savage & Reid, which said firm is composed of the said O. G. Savage and the said G. S. Reid, to have and to hold the said property unto and to the use of the parties of the second part, their executors, administrators, and assigns forever, from and after the death of the party of the first part. In the meantime, the said party of the first part will, during the time of his natural life, retain the possess'on, use, and control of his interest in said property in all respects as if this indenture had not been executed. That said parties of the second part hereby covenant and agree with the party of the first part, in consideration of the foregoing bargain and sale to them, to pay forthwith after the decease of the party of the first part all indebtedness then owed by the said partnership firm

of Savage & Reid, and indemnify and save harmless the heirs, executors, administrators, and assigns of the said party of the first part all and every and all claims and demands, loss, cost, charges, damages, and expenses for or on account of any indebtedness due or owing by the said firm. In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written. Done in the presence of R. J. Fleming and Louise Heulet Bickford.

[Signed] "O. G. Savage." [Seal]

This document was not recorded until March 23, 1900. Soon after delivering it, Savage went to California, and afterward made a second trip and married for the third time, bringing his wife with him to Salem, where they lived in the same house with plaintiffs. Plaintiffs claim that after his return with his wife he again requested them to have the deed recorded, and they did so.

The partnership business became very profitable, and in December, 1902, Reid sold his half interest in the firm to H. C. Fletcher, for $6,500, reserving his interest in the uncollected accounts, and thereafter took no part in the business, which was continued under the firm name of Savage & Fletcher.

At some date not disclosed in the evidence, the third Mrs. Savage died, and Savage married the defendant, Emma L. Savage. In 1903 he sold a one-fourth interest in the business to O. A. Kruse; the firm being known thereafter as Savage, Fletcher & Kruse. Later Kruse sold out to L. A. Byrd, and in 1906 Savage sold his remaining one-fourth interest to Byrd for $1,613.80, and also conveyed to Byrd his interest in a town lot for $500. Plaintiffs claim that this lot was also part of the asset of the partnership. Plaintiffs knew of all these sales, and made no protest or remonstrance or claim to the property, until after the death of Savage.

In 1906 the farm in question here was purchased for about $2,500; Savage paying $2,000 of the purchase

price and his wife paying $500. The deed was made to them both, and upon his death the title to the whole devolved upon his widow as a surviving tenant by entirety.

Savage died in January, 1909, leaving a will, bequeathing to his wife a portion of the income, for life, of 40 acres of land situated in Marion County, with remainder over of the fee to Linnie M. Reid, Gertrude Kruse, and Henry Kruse; also bequeathing the use and occupancy of a dwelling house and lot in Salem to his wife, so long as she should remain unmarried with remainder over to the same parties; and all other estate not specifically devised was bequeathed to the same parties. It was also declared that the estate by entirety, to which his wife would succeed by virtue of the deed to the Polk County farm, was to be in lieu of dower in the remainder of the property of decedent.

On June 10, 1909, this suit was commenced, plaintiffs claiming that they were the owners of the partnership interest of Savage in the business before mentioned, and that the proceeds derived from the sale of it had been used to purchase the Polk County farm, and asking that the defendant be held as a trustee and required to convey the premises to them. The court below found that defendant was a trustee, for the use of plaintiff, to four-fifths of the property, and from a decree in accordance with this finding defendant appeals.        REVERSED.

For appellant there was a brief with oral arguments by *Mr. Oscar Hayter* and *Mr. Carey F. Martin.*

For respondents there was a brief with oral arguments by *Mr. Grant Corby* and *Mr. George G. Bingham.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. In our judgment the evidence in this case fails to show that any title to Savage's interest in the partnership business ever passed to plaintiffs. The alleged contract,

by virtue of which plaintiffs claim that they became own-
ers of the interest, consists of certain alleged promises
of Savage, and the written document contained in the
foregoing statement. The promises, detailed by plain-
tiffs in their testimony, are as follows: Reid testied:

"The agreement we had at that time was that Mrs.
Reid should come in and keep the books without any
compensation; that Mr. Savage at his death, or when
he was through with the business, would leave us his
half of the business."

Mrs. Reid testifies:

"My father said, if Mr. Reid and I would come in
there and work hard, and let him work when he wanted
to, he would just use it as long as he was able to use it;
then he would give it to us—the whole business."

Neither of these statements constitute a present trans-
fer of an interest in the business. They constitute, if
anything, an executory contract to do something in the
future, and are indefinite in their terms. In Reid's state-
ment, which differs materially from that of his wife,
there is nothing to indicate how long Mrs. Reid was to
work without compensation. Was it for a month, a year,
or as long as Savage should continue in business? The
terms of the alleged contract are silent, and so is the
testimony. There is a like hiatus in the terms of the
contract as stated by Mrs. Reid. Nothing is stipulated
as to the length of time she and her husband were to
"work hard." Old age had incapacitated Savage from
doing hard work, and each succeeding year would add
to that incapacity, and consequently to the necessity of
his having assistance; and yet we find that the plaintiffs
sold out and left the business before Savage was ready
to quit. It is true he made no remonstrance, and may
have thought, under the circumstances, that it was best
for Reid to engage in some other and more healthful
employment; but there is nothing to indicate that he

expected to fulfill his promise to leave them the business, after they chose to cease to assist him, and left the burden of attending to his interest therein entirely upon his own shoulders. Considered in its strongest light, even if plaintiffs had remained with him and labored diligently to the end, the promise conveyed no interest in the property. If he sold out in violation of the promise, plaintiffs might have a cause of action against him for a breach of the contract, but no cause of suit against him as trustee of the proceeds of the sale.

2. The alleged written contract conveyed no interest in the property. On its face it purports to be the contract of both parties, but it is signed by only one of them. It purports to be in duplicate; but neither original is produced. It is unilateral in this: That the parties of the second part, not having signed it, are not bound to perform any of the acts required of them by the terms of the instrument. If Savage had experienced reverses in the feed business, leaving it in such a condition that its assets would not meet the liabilities, neither the creditors nor the personal representatives of the Savage estate could have compelled plaintiffs to discharge these liabilities. They could have pointed to the statute of frauds, and said, "We did not sign this paper, and therefore cannot be compelled to pay Savage's debts." Where both parties are not bound, neither is bound. The document is worthless as a substantive contract, and plaintiffs have not declared upon it as such.

3. We are satisfied from the evidence that at the beginning of the partnership there was some intimation or suggestion on the part of Savage that when he was through with the business he would turn it over to plaintiffs; but it is more than probable that his intention was predicated upon the supposition that plaintiffs would remain in the business as long as he continued to be connected with it, and that when Reid sold his interest and

withdrew from the firm it was understood by all parties that the promise had become nugatory. Savage's conduct in selling his interest in the business indicated that he considered it as his own. Plaintiffs knew that he had sold his interest to Kruse, and made no protest or suggestion that the money derived from the sale was their money. They knew later that he had sold his remaining interest, and they still made no protest or request that the money be secured to them. Their claim is that they were to have the business "when he was through with it," and he was certainly through with it when he sold it out entirely and withdrew therefrom. Then, if ever, they had a cause of action against him for breach of his contract; then was their time to speak. Instead of this, they chose to remain silent until death had sealed the lips that alone could give his side of the controversy. Had they urged this claim in his lifetime, it would have afforded him an opportunity of making provision for his widow out of other property, in case he failed to establish his and her right to the property in dispute here. That plaintiffs should be permitted, first, to speculate on the chances of a favorable will, and, having received all they could from that source, be permitted now, after years of silence, to urge this claim, to the detriment of his widow, is inequitable and such laches as should not be favored in a court of conscience.

The decree of the circuit court is reversed, and one will be entered here for the defendant.　　　　　　Reversed.