Argued July 18, decided July 29, 1913.

# PRUDENTIAL TRUST CO. *v.* MERCHANTS' NAT. BANK, Garnishee.

### (133 Pac. 1191.)

**Garnishment—Proceedings Against Garnishee—Burden of Proof.**

1. Where, in proceedings against a garnishee subsequent to garnishment, under Section 319, L. O. L., which provides that the issues in such proceedings shall be tried as ordinary issues of fact, the ownership of the funds in the garnishee's hands was the only issue raised, the burden of proof was on plaintiff.

**Appeal and Error—Trial by Court—Findings—Evidence.**

2. Under Section 159, L. O. L., making findings by the court equivalent to a verdict, such findings will not be disturbed on appeal, when supported by any competent evidence, though only such evidence was introduced by the party not prevailing.

**Garnishment—Proceedings Against Garnishee—Sufficiency of Evidence.**

· 3. Evidence in proceedings against a bank as garnishee, under Section 320, L. O. L., providing that judgment may be given against a garnishee for the value of defendant's property in his possession, *held* to sustain a finding that a deposit in the bank in the name of "J. J. M., Agent," belonged to J. J. M., the defendant, and that the word "agent" was affixed as a subterfuge to keep his funds from being attached by his creditors.

**Garnishment—Proceedings Against Garnishee—Defense—Waiver.**

4. Where a bank, pending garnishment proceedings, paid to the judgment debtor a fund in its hands belonging to him at the time of the garnishment, it waived its right to set off against the plaintiff, in proceedings subsequent to the garnishment, a debt owing it by the judgment debtor, the rule permitting a garnishee to apply funds in its hands to a debt due it from defendant being merely for the protection of the garnishee, and not available as a shield for the debtor.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is a proceeding subsequent to garnishment. The plaintiff, the Prudential Loan & Trust Company, a corporation, brought an action against J. J. Metzler upon a promissory note. Judgment was rendered against the defendant by default. Prior to the judg-

ment the plaintiff served two garnishment notices upon the Merchants' National Bank, one on the 8th day of November, 1911, and the other on the 11th day of November, 1911. To both garnishments the bank answered, certifying that it had no funds belonging to the defendant. The certificate being unsatisfactory to the plaintiff, the Merchants' National Bank was ordered to appear before the court and be examined on oath concerning the same. Allegations and interrogatories were served upon the garnishee, pursuant to the provisions of Section 315, L. O. L., to which the bank answered, denying that it had any money upon deposit belonging to defendant, J. J. Metzler, and disclosing that at the time of the garnishments it was carrying an account with the defendant in the name of "J. J. Metzler, Agent"; that after the garnishments it continued to receive deposits on such account and pay checks against the same signed by "J. J. Metzler, Agent"; that there was a balance of the account, which was afterward paid to the order of "J. J. Metzler, Agent." By an amendment to the answer the garnishee alleged "that the deposits in the name of J. J. Metzler were of funds drawn by J. J. Metzler, as agent, upon parties with whom he was dealing in the purchase and sale of hops, that checks had been drawn against such deposits, in payment for the purchase of such hops, and that this garnishee was regularly advised of the same." The garnishee further alleged that at the time each of the garnishments was served upon it, J. J. Metzler was personally indebted to the bank in the sum of about $1,500 upon demand notes. The defendant Metzler was called as a witness, and testified that he had carried an account in the bank as "J. J. Metzler, Agent," for several years; that he drew drafts upon different persons, with whom he was doing business, sometimes with bill of lading or ware-

house receipt attached, and deposited the money in the bank in order to pay for hops purchased; that he ran two hop ranches, and raised hops himself; that the hop farm account was kept with the money for buying hops, but that he had no money in the bank on account of the hop farm at the time of the garnishment; that he received one half cent per pound as commission for buying hops for one firm; and that he usually received whatever he could make by the purchases and filling of orders for other firms. He stated that he did not know whether or not there was any commission belonging to him among the funds in question. In regard to commissions he said: "I don't know whether it was mine or not; it might have been some there." Upon being questioned particularly as to different deposits he made about the time of the notices of garnishment, he mentioned drafts upon his brother and a firm in Chicago. He did not say whether the drafts were for hops shipped from his farm, and seemed unwilling to explain the matter except in a general way. In the account the money was mingled together. His evidence tended to show that on the 4th of November, 1911, he drew a check on this account in favor of the Merchants' National Bank for $1,004.45, in payment of his note, and that he used the funds for his personal expenses and had full control over such funds. It was admitted by the garnishee that the funds in the account in question at the time of the garnishment were paid out subsequent thereto, upon checks signed by the defendant, and that no part of such funds was applied to the defendant's indebtedness to the garnishee. The court found that the funds in the hands of the garnishee, to the amount of $1,128.87, belonged to the defendant Metzler, and rendered judgment in favor of the plaintiff against the

garnishee for $616.59, the amount of plaintiff's judgment against Metzler.   The garnishee appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. M. M. Matthiessen* and *Mr. Richard W. Montague,* with an oral argument by *Mr. Matthiessen.*

For respondent there was a brief over the names of *Farrington & Farrington* and *Mr. C. M. White,* with an oral argument by *Mr. White.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The garnishee contends that the evidence does not sustain the findings made by the trial court.   Section 319, L. O. L., provides that the issues in such a proceeding shall be tried as ordinary issues of fact.   The ownership of the funds was the only issue raised.   The burden of proof was upon the plaintiff.

2. In an action at law, tried by the court without a jury, the findings of the trial court are equivalent to the verdict of a jury: Section 159, L. O. L.   In such a case, this court upon appeal will examine only the testimony in order to ascertain if there is any competent evidence to support the findings.   If there is such evidence, the findings cannot be disturbed: *Savage* v. *Salem Mills Co.,* 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065); *Singer* v. *Pearson-Page Co.,* 58 Or. 526 (115 Pac. 158); *Giaconi* v. *City of Astoria,* 60 Or. 12, 29 (113 Pac. 855, 118 Pac. 180).   In the determination of this question all the evidence should be considered, as the plaintiff is allowed the benefit of any evidence introduced by the adverse party: *Morrison* v. *Franck,* 59 Or. 429, 435 (110 Pac. 1090, 117 Pac. 308); *Dryden* v. *Pelton-Armstrong Co.,* 53 Or. 418, 421 (101 Pac. 190).

3. It appears from the record that at the time of the garnishment, and for a long time prior thereto, the defendant deposited funds with the garnishee in the name of "J. J. Metzler, Agent": See *Proctor* v. *Greene,* 14 R. I. 42.   The garnishee by its answer disclosed no knowledge of any principal, nor did the defendant in his testimony, except by alluding in a vague and general way to several persons with whom he did business.   He did not state to whom the money belonged.   He testified in regard to the deposits as follows: "I probably bought some hops for some firm and went into the bank and drew the amounts with a draft on the parties, whoever they went to."   He does not appear to have dealt with the funds as belonging to any particular person other than himself.   A fair estimate from his statement as to his commission received indicates that there was in the bank at the time an amount in excess of the judgment belonging to him for commission.   His testimony is very vague and indefinite, and is not a complete disclosure of the transaction.   The fact that he was in possession and control of the money, and used it indiscriminately for his own purposes, and the further fact that, in any event, a large amount of the deposits belonged to him as his commission, together with the other circumstances of the case, have great probative force, and in our judgment are decisive evidence of title: *Silsbee State Bank* v. *French Market Grocery Co.,* 103 Tex. 629 (132 S. W. 465, 34 L. R. A. (N. S.) 1207).   This evidence was not overcome in any manner.   From the evidence the trial court, acting as a jury, might reasonably conclude that the money belonged to the defendant Metzler, and that the word "agent" affixed to his name was only a subterfuge on his part to keep his funds from being attached by his creditors.   The Merchants' National Bank, garnishee, alleged and showed, and the trial

court found, that when the bank was garnisheed, defendant Metzler owed the garnishee about $1,500 on demand notes. It appears from the answer of the latter that between the 1st and 11th of November, 1911, seven deposits were placed in the bank by J. J. Metzler, amounting to $9,830.52, and that during the same time 13 checks were paid to the order of "J. J. Metzler, Agent," amounting to $3,919.87.

4. The claim of the garnishee that the funds should be applied to the payment of the notes of Metzler is inconsistent with its denial that it had any funds belonging to this debtor: *Jackson* v. *Bank of United States,* 10 Pa. 61, 67. We will pass that question, however. It is a general rule that the garnishee may set off, against the debt due to the principal debtor, whatever demands the garnishee might have set off against such debtor himself had the latter sued the garnishee: *Nutter* v. *Framingham & Lowell R. R. Co.,* 132 Mass. 427, 430. The bank had the right to apply the funds in its hands at the time of the garnishment, belonging to Metzler, to the payment of a debt due from the latter to it, had it manifested a desire to do so by its pleading and proof. But it had no right to pay such funds to the order of Metzler during the garnishment proceedings and such payment was at the risk of the bank. It seems that the bank disclosed the facts affecting its liability to Metzler as fully as they could be ascertained from him. As between the attaching creditor and the judgment debtor the garnishee should occupy a disinterested position, and hold the money or property garnisheed until the matter is adjudicated or the attachment is discharged: *Archer* v. *Whiting,* 88 Ala. 249 (7 South. 53); Drake, Attachment (7 ed.), § 453. The bank waived the privilege of applying the funds upon Metzler's notes by paying him the same during the pendency of the garnishment

proceedings. By so doing it clearly indicated that there was no intention on its part to do so, and no agreement or understanding with Metzler that such application should be made, thereby eliminating that question from this case.

By the bank simply holding a note against the debtor would not enable him to draw his money and defeat the attachment. The rule permitting the garnishee to apply funds in its hands to the payment of a debt due to such garnishee is for the protection of the latter, and cannot be made a shield for the judgment debtor. Section 320, L. O. L., directs that if by the answer of the garnishee it shall appear, or if upon trial it is found, that the garnishee, at the time of service upon him of a copy of the writ of attachment and notice of garnishment, had any property of the defendant liable to attachment, not admitted in the certificate, and to which the garnishee is required to certify, judgment may be given against the garnishee for the value thereof.

The evidence in this case fairly sustains the findings of fact. The judgment of the lower court will therefore be affirmed.                              AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.