(102 So. 603)

## C. S. WEAVER & SONS et al. v. DUMAS.
### (7 Div. 391.)

(Supreme Court of Alabama.   Nov. 20, 1924.
Rehearing Denied Jan. 22, 1925.)

1. **Garnishment** ⚷116—Salary paid by garnishees to debtor pending garnishment proceeding at garnishees' risk.

Payment of salary by garnishees to debtor during pendency of garnishment proceeding is at garnishees' risk and renders them liable to garnisheeing creditor therefor.

2. **Garnishment** ⚷164—Evidence held to show no debt due from principal debtor to garnishees to be set off against creditor's claim for salary paid to debtor.

Evidence that garnishee debtor's son took over partnership business in which debtor owned largest interest in full satisfaction of his interest in firm, held to show that there was no indebtedness due by father to firm to be set off against garnisheeing creditor's claim for salary paid to father during pendency of garnishment proceeding.

3. **Garnishment** ⚷130—Debt due garnishees from principal debtor not intended to be set off against debtor's salary could not be used as set off against garnisheeing creditor.

Where garnishees' agreement to pay salary to father clearly indicated that any indebtedness to garnishees was not to be set off against salary, such debt could not be set off in father's suit against garnishees for salary on ground of implied agreement not to do so, and it could therefore not be used as set-off against garnisheeing creditor of father.

4. **Garnishment** ⚷148—In absence of contest, answer of garnishee taken as true.

In absence of contest, the answer of garnishee must be taken as true.

5. **Garnishment** ⚷149—Excluding further testimony by debtor who had previously fully testified at another term held proper.

Where first examination of debtor and garnishee established that debtor was not member of garnishees' partnership, held that, on further examination at another term, court properly excluded further testimony on this point by debtor who had previously been fully examined.

6. **Garnishment** ⚷163—Evidence that debtor wasted his interest in garnishees' partnership and had invested in another concern held properly excluded.

Evidence that debtor had wasted his interest in garnishees' partnership and had invested money in another concern held properly excluded as not material.

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Talladega County; A. P. Agee, Judge.

Garnishment suit by W. L. Dumas against C. S. Weaver & Sons and others. Judgment for plaintiff, and garnishees appeal. Affirmed.

Riddle & Riddle, of Talladega, for appellants.

It was error for the court to refuse to permit C. S. Weaver to testify. Jefferson Sav. Bank v. Nathan, 138 Ala. 347, 35 So. 355. Counsel argue other questions, but without citing additional authorities.

Knox, Acker, Dixon & Sims, of Talladega, for appellee.

The payments made by the garnishee to the defendant during the pendency of the proceedings were at the risk of the garnishee. Archer v. People's Savings Bank, 88 Ala. 249, 7 So. 53; Ely v. Blacker, Gerstle & Co., 112 Ala. 311, 20 So. 570; Montg. Candy Co. v. Wertheimer Shoe Co., 2 Ala. App. 403, 57 So. 54; Jenkins v. Leader, 9 Ala. App. 116, 62 So. 370.

GARDNER, J. Appellee, as judgment creditor of C. S. Weaver, procured the issuance of garnishment writs against the appellants. The garnishees filed a general answer denying indebtedness, and plaintiff requested oral examination of the garnishees in the presence of the court. Upon conclusion of this examination the court rendered judgment in favor of the plaintiff against the garnishees, C. S. Weaver & Sons and Cabot Weaver, individually, for the sum of $1,111.-95, from which judgment the garnishees have prosecuted this appeal.

It appears that C. S. Weaver, the judgment debtor, at one time owned the entire assets of the mercantile business in Talladega, now carried on in the name of C. S. Weaver & Sons. Later two of his sons were given a working interest in the business; their compensation to be one-third of the profits jointly, or one-sixth each. This arrangement continued until the expiration of the period fixed in the written contract of January 1, 1908, and at the expiration of that period the two sons continued in the conduct of the business with the father, with no apparent change in the same, until 1918, when one of the sons retired from the firm, taking out of the business as his estimated share $4,000—the business continuing as theretofore.

The answer of the garnishees tends to show that in September, 1921, the father turned over the business to his son Cabot, and withdrew from the firm. Two other brothers seem to have become members with a working interest in the business, but this is a matter of no material consequence here.

The father had become heavily indebted on account of a business venture entered into by him individually, and it appears that the suit brought by the plaintiff was then pending. His answer, as well as that of his son Cabot, tends to show that as the other son who had withdrawn from the firm previously received $4,000 as his share, that this amount should also represent the interest of Cabot, and the father stated that he told his son Cabot he could have the business for $4,000, and take care of the indebtedness and "go ahead with it." The father further stated that there was no inventory taken of the business or appraisement of the accounts, and that he stated to Cabot:

"I will agree that the firm owes you $4,000, and for that reason you just take over the whole business, accounts, and everything, and be the owner of them. I have wasted mine and I will get out."

The business continued under the old firm name, the father transacting business just as he did before, and drawing checks as a member of the firm as he previously did. It was agreed that he was to receive $150 per month for his services, and he drew this sum in money and goods each month.

Upon the first oral examination nothing was said by the garnishees in regard to the payment of this salary in advance, but the examination was continued until a later day, and Cabot Weaver being then examined, stated that since July, 1922, his father had been paid his salary in advance. It appears, however, without dispute, that at the time of the service of the garnishment writ January 18, 1922, until the following July, the father, C. S. Weaver, was paid out of the firm in goods and money $150 per month, with no agreement or understanding that it should be collected or paid in advance. It is for this salary, so paid C. S. Weaver, the father, that the trial court rendered the judgment.

[1] Under our decisions, such salary, paid by the garnishees to the debtor during the pendency of the garnishment proceeding, is at the risk of the garnishees and renders the latter liable to the garnishing creditor therefor. Ely v. Blacker, 112 Ala. 311, 20 So. 570; Archer v. People's Sav. Bank, 88 Ala. 249, 7 So. 53.

[2] Counsel for appellants recognize the force of this principle as applicable to the facts here stated, but seek to avoid the effect thereof by reason of a set-off (Jefferson County Sav. Bank v. Nathan, 138 Ala. 342, 35 So. 355), insisting that at the time of the payment of this salary C. S. Weaver was indebted to the firm or Cabot Weaver in an amount in excess of his salary. As we read and understand the brief of counsel for appellants, this question of indebtedness appears to be rested upon the assumption that C. S. Weaver was due his son $4,000 by reason of his interest in the business, and that the estimated net value thereof does not equal this sum and the difference is still due his son Cabot Weaver.

[3] It is very clear, however, that this did not represent a matter of indebtedness. The son Cabot merely took the business over for his interest in the firm and accepted the same as in full satisfaction of such interest. Speaking of the $4,000, Cabot said:

"I got this in September, 1921. I received it in goods, shoes, and etc.; C. S. Weaver & Sons turned it over to me."

An indebtedness, therefore, of C. S. Weaver to the firm or to Cabot or any individual member thereof is not made to appear. Moreover, there is another answer to this insistence, even though indebtedness had appeared. This for the reason that the answer of the garnishees very clearly indicates that any such indebtedness was not to be set-off against the $150 salary to be paid monthly to C. S. Weaver, the father. The sons lived with the father at his home, the latter paying all household expenses, and we think the question of set-off would have been no defense in a suit by the father against the garnishees for this salary upon the ground of an implied agreement by the garnishees not to claim it.

The following language from Archer v. Peoples' Sav. Bank, supra, we consider applicable to the situation here presented:

"The necessary, fair, and honest implication is, that the set-off, based as it was on an old debt due by a partnership * * * was not to be claimed against this agreed compensation for * * * services. The very motive which induced its payment in advance, and a fact which would tend to rebut the charge of fraudulent collusion, may have been the implied need of the money for the maintenance of the debtor."

We are therefore of the opinion that the court correctly ruled in subjecting to liability the salary admittedly paid C. S. Weaver out of the business from the time of the service of the garnishment writ until the following July, and as to this ruling the garnishees cannot complain.

[4, 5] It appears that after the oral examination of C. S. Weaver and Cabot Weaver the cause was continued to another term. Upon the first examination it was established that C. S. Weaver was not a member of the firm. There was no contest, and the answer of the garnishees must be taken as true. Hurst v. Home Prot. Co., 81 Ala. 174, 1 So. 209. When the cause was again called for trial Cabot Weaver was further examined, and at the conclusion of his examination offered C. S. Weaver as a witness. The objection of the plaintiff was sustained. C. S. Weaver had previously been fully examined, and questioned both by the plaintiff and by the garnishees, and in this action of the court we find no reversible error.

[6] We are unable to see the materiality of the fact that C. S. Weaver, the father, had wasted his interest in the business, and had placed $5,000 at one time in a graphite concern. There was therefore no error in sustaining the objection to this question, which constitutes the fourth assignment of error.

We have here considered the assignments of error insisted upon by counsel for appellants, and, finding nothing therein calling for a reversal of the cause, the judgment will be accordingly here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.