Argued January 15, reversed July 30, petition for rehearing
denied September 17, 1958

# PHIL GROSSMAYER CO. *v.* CAMPBELL

328 P. 2d 320

*Walter H. Pendergrass* argued the cause for garnishee-appellant. On the briefs were Pendergrass, Spackman & Bullivant, Portland.

*Morton A. Winkel,* Portland, argued the cause for respondent. On the brief were Rosenberg, Swire & Coan and Ernest Bonyhadi, Portland.

Before PERRY, Chief Justice, and ROSSMAN, BRAND[*] and McALLISTER, Justices.

ROSSMAN, J.

This is an appeal by the garnishee, The First National Bank of Portland, from a judgment which the circuit court entered against it in the sum of $581.15 in an action wherein Phil Grossmayer Co., a corporation, was plaintiff, and an individual by the name of C. A. Campbell was defendant. The judgment was based upon findings of fact and conclusions of law.

The action of Phil Grossmayer Co. against the defendant Campbell, instituted March 6, 1952, terminated with the award of judgment in favor of the plaintiff and against the defendant in the sum of $2,882.58, together with costs and interest. The award of the judgment was pursuant to stipulation of the parties.

When the writ of attachment was served upon the garnishee bank, the latter had no account in the name of C. A. Campbell but held $581.15 in a commercial account under the name of Campbell & Hall, Inc. A corporation thus entitled was formed in 1931 or 1932 and conducted an insurance business until 1951. C. A. Campbell, the defendant in *Phil Grossmayer Co. v. Campbell*, was for many years active in the affairs of that corporation and at one time owned virtually all of its shares of stock. January 7, 1952, after the corporation had failed to comply with the requirements of § 77-243, OCLA, the Governor issued a proclamation which dissolved it. In the latter part of 1951 Campbell opened with the garnishee bank the aforementioned account; that is, the one entitled Campbell & Hall, Inc. The corporation just named was not a party to the plaintiff's action against Campbell nor in the proceeding against the garnishee. The plaintiff claims, and the

---

* Resigned June 30, 1958.

circuit court found, that the account belonged to defendant Campbell.

The garnishee-appellant (the bank) presents seven assignments of error. The second charges that the trial judge erred when he entered as a conclusion of law the following:

"The defendant's funds in the bank account in the name of 'Campbell & Hall, Inc.' are subject to garnishment by plaintiff in an action against the defendant."

The third assigns as error a finding of fact which reads:

"All funds on deposit in said account were, in their entirety, the sole and absolute property of defendant and no other person or corporation."

The seventh challenges the following conclusion of law:

"Plaintiff is entitled to recover from the garnishee the sum of $581.15, with interest thereon * * * ."

Those assignments of error will suffice to indicate the issues.

The appellant's brief argues that the circuit court made two basic errors, and abridges its statement of them into the following:

"First, the corporation, in whose name the account stood, was not a party to the proceeding at the time the plaintiff undertook to attach the account, nor has it since been made a party. Second, the Bank had no notice, until April, 1953, more than one year after the plaintiff undertook to attach the account, that the account in its entirety belonged to the defendant, if that is a fact."

We explain that in April, 1953, more than a year after the bank made its amended return to the writ of at-

tachment, the plaintiff served upon it allegations and interrogatories.

In submitting the contentions just quoted, the bank depends in part upon § 40-1005, OCLA, [now, after slight revision, ORS 708.525] which reads in part as follows:

"Notice to any bank or trust company doing business in this state of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause said bank to recognize said adverse claimant unless said adverse claimant shall also either procure a restraining order, injunction or other appropriate process against said bank from a court of competent jurisdiction in a cause therein instituted by him wherein the person to whose credit the deposit stands is made a party and served with summons, or shall execute to said bank or trust company, in form and with sureties acceptable to it, a bond indemnifying said bank or trust company from any and all liability, loss, damage, costs and expenses for and on account of the payment of such adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands * * *."

No restraining order of the kind mentioned in § 40-1005 was served upon the bank and no bond was posted.

The notice of garnishment was served upon the granishee (the bank) March 6, 1952; it stated:

"You are hereby notified, that by virtue of a writ of attachment issued out of said court in the above entitled action, to me directed (a certified copy of which is herewith served upon you), all debts, property, monies, rights, dues or credits of every nature, in your hands or under your control, and especially a certain all sums of monies or safety deposit boxes maintained by the defendant in his name or in the name of Campbell and Hall, Inc., belonging or owing to said C. A. Campbell or . . .

or either of them, are hereby attached and garnisheed, * * *."

It will be observed that the notice of garnishment spoke of Campbell & Hall, Inc., which was organized in 1931 or 1932. According to the defendant, the incorporators were "Rule and Son and myself and Charles Hall." The defendant became one of its stockholders and officers. In 1934 the defendant borrowed money from A. B. McManiff, his father-in-law, and with it purchased the shares of stock which Rule and Son held. About that time the defendant owned all of the corporate stock except one share. In order to secure payment of his indebtedness to Mr. McManiff, the defendant pledged his shares of stock to him. In 1951 Campbell & Hall, Inc., sold all of its assets to one L. B. McNab. The sale included the corporation's records, books, fixtures and good will. Following the sale, the corporation possessed nothing. The defendant testified:

"THE COURT: Did the corporation have any income after the sale of the insurance business?

"THE WITNESS: None that I know of."

Concurrently with the sale of all of its assets to McNab, Campbell & Hall, Inc., agreed to quit the insurance business for the next five years. The money it received from McNab was wholly consumed in the discharge of its indebtedness. Accordingly, following the sale, it possessed nothing, engaged in no business and had no income. We have mentioned the proclamation which the Governor issued January 7, 1952, whereby the corporation was dissolved and its articles of incorporation revoked. However, § 77-246, OCLA, recognizes that corporations which are the subject of such proclamations retain sufficient of the vital spark for five years to permit a wind-up of their affairs.

Mr. McManiff died in 1936 and at that time the defendant's indebtedness to him remained unpaid. The defendant's wife inherited from her father the stock which the defendant had pledged to him and still held it at the time of the trial. Presumably it was worthless.

March 11, 1952, the bank, as garnishee, made a return which stated:

"* * * this Garnishee does certify that it has in its possession or under its control, subject to the conditions, qualifications, restrictions or priorities hereinafter mentioned, the following:

"The sum of $581.15 is being held at our Main Office in a checking account in the name of Campbell & Hall, Inc."

Following the making of that return, David Pickett, an attorney who was a friend of the defendant, telephoned to Roger Otto, the officer of the bank who had made the return, and told him

"that money was in the name of the corporation, but the corporation was not a party to the action * * * that they had made a return that Campbell held this money there when as a matter of fact it was the corporation's."

After Pickett gave Otto that information he called at the bank and there spoke to Dave Cooper, an assistant cashier. He told Cooper, according to his further testimony:

"* * * the money was in their name and Campbell himself at that time had no particular interest in the money and thought it should go to other people."

March 13, 1952, following Pickett's telephone call and visit to the bank, the latter made an amended return to the garnishment which read as follows:

"* * * For answer and return thereto, this

Garnishee does certify that it has in its possession or under its control, subject to the conditions, qualifications, restrictions or priorities hereinafter mentioned, the following:

NIL

"This return supercedes the one filed on March 11, 1952."

At the conclusion of his visit to the bank, Mr. Pickett presented to it a check for the entire sum of money on deposit in the name of Campbell & Hall, Inc., that is, $581.15. The check was honored. Pickett swore that after he had received the money he disbursed it to defendant Campbell's creditors in accordance with the latter's directions.

In the manner just indicated the bank account was exhausted. Its proceeds, it will be noticed, went to satisfy the defendant's creditors.

Following the sale of the assets of Campbell & Hall, Inc., the defendant engaged in the sale of insurance, and incurred the indebtedness to the plaintiff which underlies the attachment proceeding. In the meantime, he found it desirable to have a bank account and spoke to the aforementioned Dave Cooper, who had charge of new accounts for the garnishee bank. The defendant inquired if he would be permitted to open an account in the name of C. A. Campbell, Agent. According to him, Cooper replied that his bank "didn't approve of that kind of an account." The defendant then suggested that he would like to open the account in the name of Campbell & Hall, Inc. Presently he presented to Cooper a paper which purported to be a resolution of the board of directors of Campbell & Hall, Inc., authorizing the account and which, after describing the defendant as president of the corporation, designated him as the officer who would sign the

checks. Cooper approved the request and the account was opened April 14, 1951. Actually, no meeting of the board of directors had occurred and the purported resolution was a fabrication.

There is nothing in the record which intimates that Cooper knew that Campbell & Hall, Inc., had been dissolved. The allegations and interrogatories do not claim that the bank was a party to any fraud or had knowledge of the evil purposes which prompted the defendant. Likewise, they do not charge that there was any collusion between the bank and the defendant.

A belief that Otto or Cooper distrusted, or should have distrusted, Pickett when he told them that defendant Campbell had no interest in the money on deposit would find no support in the record. It will be recalled that when Pickett received the proceeds of the account he disbursed it to the defendant's creditors, but no witness suggested that any officer of the bank knew that he intended to take that course with the money.

The evidence renders it clear that the bank account, although in the name of Campbell & Hall, Inc., was actually that of the defendant. The following is taken from the latter's testimony:

"Q  In other words, you used this as your personal bank account?
"A  That's right.
        *    *    *
"Q  And when you needed to buy groceries, pay rent, you would draw money from this account?
"A  That's right."

■ The circuit court's findings of fact include the following:

"That all funds on deposit in said account were, in their entirety, the sole and absolute property of the defendant and no other person or corporation. That a portion of the funds on deposit in said ac-

count represented premiums paid to defendant on certain insurance contracts.

"That the defendant opened and maintained said account in said manner under the name 'Campbell & Hall, Inc.' as a subterfuge, and for the purpose of hindering, delaying and defrauding his creditors.

"That Campbell & Hall, Inc. was no longer engaged in business at the time of the opening of said account, and had completely wound up its corporate affairs at that time, and has not subsequently engaged in any transactions as a corporation for the purpose of winding up its affairs or otherwise."

Those findings are the equivalent of the verdict of a jury. *Prudential Trust Co. v. Merchants' National Bank,* 66 Or 224, 133 P 1191.

The findings do not state that the bank had knowledge that the account in the name of Campbell & Hall, Inc., belonged to the defendant and was not the property of Campbell & Hall, Inc. They do not declare that the bank was aware of the fact that Campbell & Hall, Inc., had been dissolved or that the defendant, in opening the account in the corporate name, was prompted by evil motives.

It will be recalled that after the notice of garnishment was delivered to the bank and Mr. Pickett had told two of its officers that the account belonged to Campbell & Hall, Inc., a check bearing that name and drawn for the full amount of the account [$581.15] was cashed. The question, therefore, which the case presents is whether the bank, as garnishee, is liable once more for the money—this time to the plaintiff because findings of the circuit court declare:

"* * * all funds on deposit in said account were, in their entirety, the sole and absolute property of defendant * * *. The defendant opened and main-

tained said account in said manner under the name 'Campbell & Hall, Inc.' as a subterfuge, and for the purpose of hindering, delaying and defrauding his creditors."

The plaintiff's brief expresses the issue in this manner:

"1. Was the account in question the defendant's own account under another name? and, if so,

"2. Did appellant have reason to know that the account was in fact defendant's own account and therefore subject to respondent's garnishment?"

In making answer to those questions we must bear in mind the part of § 40-1005, OCLA, which says:

"Notice to any bank * * * of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause said bank to recognize said adverse claimant unless:

the latter procured a restraining order prohibiting the bank from honoring the checks of the person entered upon the bank's records as depositor, or posted a bond which promises indemnity to the bank if it thereafter declines to honor the checks of the person whose name appears in its files as depositor. The statute provides that if the adverse claimant resorts to the restraining order method, he must make "the person to whose credit the deposit stands" a party and serve him with summons. The bank must also be made a party, for the statute speaks of "a restraining order, injunction or other appropriate process against said bank." If the adverse claimant selects the alternative to the restraining order, this is, "a bond indemnifying said bank or trust company from any and all liability," then the form of the bond and its sureties must be "acceptable" to the bank. It will be noticed that if the adverse claimant resorts to the restraining order method, he must file a suit; that is, one on the equity

side of the court which names as defendant, not only the alleged debtor, but also the bank and the person who, he claims, is the actual owner of the account. No such suit was filed in this case and no indemnity bond for the bank's protection was obtained.

██ The application of the statute just cited is not restricted to attachment and garnishment proceedings. It does not even mention proceedings of that kind and its reach is broader. The statute is applicable in all cases when "an adverse claim to a deposit" is made. Its purpose is to relieve the bank of the financial responsibility attendant upon deciding whether the person entered upon the bank's books is entitled to the deposit money, or whether the person whom the adverse claimant says is the owner of the account should be recognized as such. If the adverse claimant, whatever may be the nature of his purported rights, obtains from the court an injunction, he is required to file an undertaking and thereupon both the injunction and the undertaking protect the bank when it complies with the court's order. It is in that suit that the court will determine ownership of the account. If, in lieu of securing an injunction, he posts an indemnity bond, the latter affords the bank protection when it declines to honor the checks of the individual whose name is entered in its records as depositor.

The plaintiff argues that § 40-1005, supra, is inapplicable to the case at bar. Its brief says:

"Appellant's brief entirely misconceives the legal issues involved because it is predicated entirely upon the erroneous assumption that the garnished account was not defendant's but rather that of the corporation in whose name it stood."

Going on, the brief declares:

"This section has no application or relevance whatsoever. It only applies in a case where two

persons adversely claim a deposit whereas, here, 'C. A. Campbell', the defendant, and 'Campbell & Hall, Inc.', the name used by defendant to maintain his account, are one and the same."

But when the bank, after the writ of attachment had been served, was presented with a check bearing the signature of Campbell & Hall, Inc., for the full amount of the deposit, it did not know that Campbell & Hall, Inc., was a mere pseudonum for C. A. Campbell. The demands and assurances of Mr. Pickett persuaded the bank's officers that Campbell & Hall, Inc., was an existing corporation and that C. A. Campbell, whom the plaintiff claims was the owner of the account, had no interest in it. The mere fact that the defendant, C. A. Campbell, had sought to open the account in the name of C. A. Campbell, Agent, and that the bank declined to grant him that privilege does not establish that it knew that the defendant was the owner of the account which was later opened in the name of Campbell & Hall, Inc. Before that account was opened Campbell had presented the resolution which, he asserted, the board of directors of the corporation had adopted. When the bank, in the absence of a restraining order or of the alternative indemnity bond, deemed itself bound to honor a check bearing the signature of Campbell & Hall, Inc., it had as authority for its action in so doing: *New Amsterdam Casualty Co. v. Roberston et al.*, 129 Or 663, 278 P 963, 64 ALR 1396; *Dahl & Penne, Inc. v. State Bank of Portland*, 110 Or 68, 222 P 1090; Zollmann on Banks and Banking, Perm Ed, § 3153; 9 CJS, Banks and Banking, § 342, p 684; and 1 Paton's Digest of Legal Opinions, 4A:6, p 177.

The plaintiff cites *Prudential Trust Co. v. Merchants' National Bank*, 66 Or 224, 133 P 1191, and *Valley Bank & Trust Co. v. Parthum*, 47 Ariz 496, 56

P2d 1342. In garnishment proceedings in the Prudential Trust Company case, the circuit court found that J. J. Metzler and J. J. Metzler, Agent, were the same individual. The resulting judgment was affirmed upon appeal. In so doing, this court declared:

> "* * * This evidence was not overcome in any manner. From the evidence the trial court, acting as a jury, might reasonably conclude that the money belonged to the defendant Metzler, and that the word 'agent' affixed to his name was only a subterfuge on his part to keep his funds from being attached by his creditors."

At that time, § 40-1005, OCLA, had not been enacted.

In the Valley Bank case, one by the name of Frank Healy opened a checking account with the bank September 12, 1933, in the name of Katherine Lee. Healy had a daughter, fifteen years of age, by the name of Katherine Lee Healy. Healy made the deposits in the account and his daughter signed the checks, using the name Katherine Lee in so doing. The decision, referring to the account and the manner in which it was operated, said:

> "* * * This was done to prevent creditors of defendant Healy from enforcing their claims against him."

The notice of garnishment, according to the decision,

> "required the garnishee 'to answer upon oath what, if anything, it is indebted to the said defendant Frank Healy on account maintained by defendant in the name of Catherine Lee or Katherine Lee, which account was made by the defendant and is checked on by defendant, and was when this writ was served, and what effects, if any, of the said defendant or (it) has in its possession, and had when this writ was served,' etc."

The bank answered that it possessed nothing and, following the notice, continued to honor checks drawn as above described. In that manner, the account was exhausted. The court, in affirming judgment against the garnishee, said:

> "* * * There is no question but that the money in the Katherine Lee account was that of defendant. Katherine Lee, in whose name the account was kept, was a mere dummy used by her father to defraud and delay his creditors. It is hardly probable that she, only fifteen years of age, consciously participated in the fraud, and it is certain that the bank had no knowledge of the defendant's plan or scheme to defeat his creditors in the manner indicated."

The decision, however, held that the notice of garnishment

> "identified the Katherine Lee account as belonging to defendant Healy and conveyed to the garnishee knowledge of this claim. Under such circumstances, we think it was the duty of the bank to treat the Katherine Lee account as in custodia legis until the court decided whose account it was."

The decision mentioned no statute similar to § 40-1005, OCLA. Upon rehearing the court made the following significant utterances:

> "* * * In our statement of the case, we tried to set out in as little space as possible the essential or necessary facts to a correct decision of the questions involved, but in doing so we failed to state that Katherine Lee, the fourteen year old daughter of the defendant and in whose name the defendant carried his account with the garnishee bank was, under the direction of the court, made a party to the garnishment proceeding and that her guardian ad litem, Ivan Robinette, for and in her behalf, filed an answer putting in issue plaintiff's claim that the money on deposit in the garnishee bank was the money of defendant Frank Healy."

The court added that the answer averred that the money in the account belonged to the daughter. Then the court said:

> "If Katherine Lee had not been made a party, the funds in controversy being in her name, the court would not have had jurisdiction to decide that the funds were not hers. Before that could have been done, she was entitled to her day in court."

It will be observed that § 40-1005, supra, affirmatively requires that in instances such as the present, "the person to whose credit the deposit stands" must be "made a party and served with summons."

■ We believe that this case is within § 40-1005 OCLA, and, since the plaintiff did not charge the bank with fraud, collusion or bad faith, and failed to comply with the demands of the statute just mentioned, the garnishee bank was justified in honoring the check drawn by Campbell & Hall, Inc. Therefore, the previously quoted assignments of error are sustained. The circuit court erred when it entered the challenged judgment against the garnishee bank. That judgment is reversed.