Argued April 10, affirmed July 2, 1929.

## NEW AMSTERDAM CASUALTY CO. v. RUSSELL W. ROBERTSON AND THE WEST COAST NATIONAL BANK.

(278 Pac. 963.)

For appellant there was a brief over the names of *Mr. Jay S. Moltzner* and *Messrs. Jaureguy & Tooze,* with an oral argument by *Mr. Nicholas Jaureguy.*

For respondent there was a brief over the name of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. Herbert L. Swett.*

BELT, J.—This is an action in conversion against the defendant bank located at Portland, Oregon, for participation in an alleged breach of trust. Defendant, Russell W. Robertson, against whom a default judgment has been taken, was clerk of school district No. 106 in Clackamas County, Oregon. On July

14, 1924, he opened an account with the defendant bank in the name of ''School District No. 106, Russell W. Robertson, Clerk.'' This was done with the knowledge and consent of the board of directors of the school district. On August 19, 1924, and continuing at frequent intervals thereafter, the defendant Robertson executed numerous checks payable to his order and deposited the same to his personal account in the defendant bank. Between July 3, 1925, and September 23, 1926, such checks aggregated $2,625. All of this sum was paid out by the bank on the personal check of Robertson and, with the exception of $41, was appropriated by him for his own use and benefit. Checks aggregating $41 were paid by him for obligations of the school district.

Upon default of the clerk, the plaintiff, which was surety on his bond, paid to the school district the sum of $2,584. It now seeks to be subrogated to the rights of the school district and demands judgment against the bank for the amount paid, on the theory that the bank participated in this breach of trust.

It was stipulated in substance as follows: That at the time the account was opened with the bank a copy of Robertson's certificate of election as clerk was filed with the bank for the purpose of satisfying it concerning Robertson's authority, which authority was never withdrawn and the directors were at all times cognizant of the fact that said deposit was carried as above stated; that, during the entire history of the account, Robertson alone, without countersignature, signed checks thereon which were always honored by the bank; that these facts were likewise at all times known to the directors who at no time protested, but continued to permit withdrawals from

the account in the same manner; that at no time until after the transactions mentioned in the complaint did the bank have any knowledge that funds were being misappropriated by Robertson or used other than for the regular and lawful disbursements required in the transaction of his duties and functions as clerk, unless such knowledge be inferred from the facts heretofore stated, and that the directors of the school district were at all times fully aware of the fact that checks were so drawn and deposited to Robertson's personal account and at no time objected thereto and made no protest to the bank.

The cause was submitted under the pleadings and upon a stipulation of facts, to the court without a jury. Findings of fact and judgment were entered in favor of defendant bank. Plaintiff appeals.

■ ■ It is urged by plaintiff that the deposit of these funds in the defendant bank was unlawful in that there was a violation of Chapter 155, General Laws of Oregon, 1925, amending Section 5142, Or. L., which provides:

" * * In school districts of the second and third class * * the board of directors of the respective school districts of the second and third class * * shall designate such bank or banks within the county or counties in which such second class school districts, third class school districts * * are located as the board of directors of the school districts of the second and third class * * deem safe and proper depositories for school funds for the purpose of receiving on deposit funds of said school districts. The school clerks of the several school districts of the second and third class * * shall not be liable personally or upon their official bonds for any moneys that may be lost by reason of the failure or insolvency of any bank which becomes a depository under the provisions of this act."

This statute does not make it mandatory for the clerk to deposit public funds in the bank designated by the board of directors of second and third class school districts. It is incumbent upon the directors to designate such bank and, if the clerk fails to deposit the funds in the bank designated, he assumes liability and is held to strict accountability upon failure of the bank which he selects as a depository. However, if the funds are deposited in the bank designated, the clerk does not become an insurer of the solvency of such bank and there is no liability in the event of its failure. The purpose of this statute was to relieve the clerk from the rigor of the common-law rule which, according to the great weight of authority, made the officer personally liable in the event of public funds being lost by reason of bank failures: *Baker* v. *Williams Banking Co.*, 42 Or. 213 (70 Pac. 711); 46 C. J. 1039. We conclude that the deposit in the defendant bank was duly authorized. It was a general deposit and the bank did not become a trustee of public funds. The relationship of debtor and creditor was created and the bank impliedly agreed to honor the checks of its depositor. Indeed, it would have been liable upon its failure to do so.

The important question is whether or not liability is incurred by a bank which permits a known fiduciary to transfer trust funds to his individual credit and account and who later embezzles the same. All authorities agree that, if a bank participates in a breach of duty, it is liable for the loss sustained. As to what constitutes a "participation" in a breach of trust is a question upon which courts disagree. It seems well settled that if the bank had knowledge that the fiduciary intended to misappropriate funds

and that it aided and abetted him by honoring checks drawn on the same, it became a party to the conversion and must respond in damages.

■ In the instant case, the bank knew that the funds belonged to school district No. 106. The vital question is: Did it know that Robertson, the clerk, in transferring a portion of these funds to his personal account, intended to misappropriate them? Did this act, in and of itself, constitute notice to the bank of the wrongful diversion of public funds? True, the bank should have looked with suspicion upon such a transaction, but we are not prepared to say, as a matter of law, that it was obliged to make inquiry to ascertain whether the fiduciary was violating his trust. To do so would greatly encumber and hinder banking institutions in the transaction of legitimate business, by overburdensome restrictions. In the absence of notice to the contrary, the bank had the right to assume that Robertson was faithful to his trust.

■ The clerk had at least *prima facie* authority to draw on the account. The bank was bound to honor his checks unless, as above stated, it knew of an improper diversion of the funds. It was not the business of the bank to administer the trust. The form of the checks and the manner in which the account was handled did not, according to the weight of authority, constitute notice of a misappropriation. The finding of the lower court that the bank acted in good faith is tantamount to the verdict of a jury. We do not feel warranted in disturbing it.

■ It is to be borne in mind that the bank did not profit by reason of the misappropriation of the funds by the clerk. He did not use the money to pay any

of his indebtedness to the bank. If such had been done the liability of the bank would clearly have been established: Morse on Banks and Banking (5 ed.), § 317. Having thus been advised of the wrongful application of funds by the fiduciary to his own credit, the bank would subsequently honor checks at its peril. Cases such as *Gerard* v. *McCormick,* 130 N. Y. 261 (29 N. E. 115, 14 L. R. A. 234); *Central National Bank* v. *Connecticut M. L. Co.,* 104 U. S. 54 (26 L. Ed. 693); *Union Stockyards National Bank* v. *Gillespie,* 137 U. S. 411 (34 L. Ed. 724, 11 Sup. Ct. Rep. 118) and *Manhattan Web Co.* v. *Aquidneck Nat. Bank,* 133 Fed. 76, wherein the bank accepted trust funds in payment of fiduciary's indebtedness to it, are clearly distinguishable from the one at bar.

It would greatly extend this opinion to review many of the numerous cases cited by counsel at variance on this question. We are in accord with the view as expressed by the great majority of the courts, that, if a bank, acting in good faith, merely credits trust funds, knowing them to be such, to the personal account of the fiduciary, it will not be liable if he later misappropriates such funds: *Kendall et al.* v. *Fidelity Trust Co.,* 230 Mass. 238 (119 N. E. 861); *Allen* v. *Puritan Trust Co.,* 211 Mass. 409 (97 N. E. 916, L. R. A. 1915C, 518); *Goodwin* v. *American National Bank,* 48 Conn. 550; *Safe Deposit & Trust Co.* v. *Diamond National Bank,* 194 Pa. St. 334 (44 Atl. 1064); *Life Insurance Co. of Virginia* v. *American National Bank of Richmond,* 6 Va. Law Reg. (N. S.) 106; *Gray* v. *Johnson,* 16 Weekly Reporter, 842, L. R. 3 H. L. 1; *Rice* v. *People's Savings Bank,* 140 Wash. 20 (247 Pac. 1009); 6 Cal. Law Review, 171 and 34 Harvard Law Review, 454.

The rule is thus stated in 26 R. C. L., p. 1316:

"The presumption is that a trustee will faithfully administer his trust and not misappropriate funds committed to his care, and so if moneys are deposited by one as trustee, he, as such trustee, has a right to withdraw them, and the bank, in the absence of notice to the contrary, is bound to assume, and is protected in assuming, that the trustee will appropriate the moneys, when drawn, to the proper use; and this is true whether the checks are signed by him in his representative capacity or not. But if a bank in which moneys are deposited in the name of a trustee as such has knowledge that a breach of trust is being committed by the improper withdrawal of such funds, or if it participates in the profits or fruits of any fraud on the trust, it is answerable. The mere fact, however, that a bank knows that moneys deposited with it have by a depositor been acquired in a fiduciary capacity does not impose on it the duty, or give it the right, to institute an inquiry into the conduct of its customer in order to protect those for whom he may hold the fund, but between whom and the bank there is no privity."

In *Cole* v. *Canadian Bank of Commerce,* 115 Or. 456 (239 Pac. 98), the court cited with approval Magee on Banks and Banking (3 ed.), page 304, wherein it is said:

"The whole question fixing liability is one of knowledge. The bank must have knowledge that the deposit is a trust deposit and that when it is drawn out by the trustee that he intends to misappropriate it. Unless these facts are clearly established the bank cannot be held."

For authorities to the contrary, see *United States Fidelity & Guaranty Co.* v. *People's Bank,* 127 Tenn. 720 (157 S. W. 414); *Bank of Hickory* v. *McPherson,* 102 Miss. 852 (59 South. 934); *Mitchell* v. *First National Bank of Hopkinsville,* 203 Ky. 770 (263 S. W.

15), and cases referred to in an article entitled "Bank's Liability for Deposits of a Fiduciary to his Personal Account" in volume 40, Harvard Law Review, page 1077.

It is believed that the well-considered case of *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106 (112 N. E. 759, L. R. A. 1916F, 1059), fairly supports the theory of the defendant bank here, although some of the expressions of the court give comfort to plaintiff. In that case, an executor of an estate deposited trust funds to his individual account and credit. The deposit was made in the Bowery Bank of New York and was, by checks, transferred to the Yorkville Bank where personal obligations of the executor to such bank were paid. The bank was liable because it profited through the wrongful diversion of trust funds. Having had notice of such misappropriation, it could not thereafter supinely pay the checks of the executor without assuming the risk. Under such circumstances, it was bound to make inquiry. It was held that a participation in the conversion of the funds would result from either (a) acquiring an advantage or benefit directly through or from the diversion, or (b) joining in the diversion in which it was not interested, with actual notice or knowledge that the diversion was intended or being executed and thereby becoming privy to it. In support of the theory of the defendant bank herein it was said:

"A fiduciary may legally deposit the trust funds in a bank to his individual account and credit. Knowledge on the part of the bank of the nature of the funds received and credited does not affect the character of the act. The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust."

The court expressly refused to follow *United States Fidelity & Guaranty Co.* v. *People's Bank, supra,* and *Bank of Hickory* v. *McPherson, supra,* to the contrary.

We are not concerned with a case wherein the deposit as originally made was wrongful or unauthorized, such as in the leading case of *Duckett* v. *National Mechanics' Bank,* 86 Md. 400 (38 Atl. 983, 63 Am. St. Rep. 513, 39 L. R. A. 84). It is significant that the court there said:

" * * had the bank obeyed the direction given to it, and had it opened an account in the name of Claggett as trustee, and credited that account with these funds, still Claggett could have withdrawn them on checks appropriately signed, and could then have misappropriated the money without involving the bank in any liability."

In the instant case the deposit with the defendant bank was authorized. The distinction recognized in the Duckett case may be found in *Rensselaer Valve Co.* v. *National Bank of Commerce of Seattle,* 129 Wash. 253 (224 Pac. 673).

It is not deemed necessary to consider the force and effect of Chapter 207 (§ 121), General Laws of Oregon, 1925, since, in our opinion it is in most particulars merely declaratory of the common-law rule which we have announced.

■ ■ We see no merit in the contention that the bank was unauthorized to honor the checks of the school clerk by reason of Chapter 155, General Laws of Oregon, 1925, which provides that:

" * * school funds of districts of the * * second class and third class, * * shall be disbursed only by the respective clerks of such districts * * upon warrants drawn upon such district clerks by the boards of directors of the respective school districts * * ."

It was not incumbent upon the bank to ascertain whether a warrant had been drawn upon the clerk before honoring his check. Indeed, the long acquiescence and consent of the school district to the method and manner in which the clerk checked on this account would reasonably lead the bank to believe that the clerk was authorized so to act. Since the plaintiff is subrogated to the rights of the school district it is bound by this equitable principle of estoppel.

It follows that the judgment of the lower court is affirmed. AFFIRMED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.