[Civil No. 4562.  Filed June 1, 1943.]

[138 Pac. (2d)  294.]

THE VALLEY NATIONAL BANK, a Banking Corporation, Appellant, v. AMERICAN EMPLOYERS INSURANCE COMPANY, a Corporation, Appellee.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Mr. Theodore G. McKesson, for Appellee.

STANFORD, J.—Appellant appeals from a judgment of $400 against it in the trial court. The thing actually involved here is the prevention by appellant of the establishment of a requirement, or law, and the amount involved is only $111.72.

Facts: The appellant is in the. banking business. The appellee, among other things, writes surety bonds. Maxwell R. Shephard, who was a lawyer, was appointed trustee in bankruptcy of Francis Ronald Schellenger and he had a personal account as "M. Shephard" and a separate account as trustee in bankruptcy with the appellant. Checks written by Shephard on the trustee account were required to be countersigned by Stanley A. Jerman, the referee in bankruptcy. Appellee wrote a bond for Shephard, as trustee. Shephard wrote five checks on funds in his trustee account aggregating $304.50 and forged the name of Stanley A. Jerman.

The O'Malley Lumber Company drew a check for $111.72 to Maxwell R. Shephard, trustee, on the First National Bank of Arizona at Phoenix, and in the upper left-hand corner of the check under the printed heading of "Voucher," "Explanation," "Amount," were the words, "Re Schelleng's Bankrupt."

Shephard deposited the O'Malley check in his personal account and later withdrew same and appropriated it to his own use.

The appellee paid the trustee succeeding Shephard $400 in compromise settlement of the claim of $416.22, and became subrogated to the right of the bankrupt estate against the appellant.

As to the sum of $304.50, being the aggregate of the five checks where the name of Stanley A. Jerman was forged, the appellant herein does not deny liability, but because the O'Malley check never became a part of the bankruptcy fund; it does deny that liability.

It is necessary that we dispose first of the matter of the endorsement by the O'Malley Lumber Company in the upper left-hand corner of the check. Banks have been permitting their depositors to make all sorts of notations on parts of their checks where the banks are not concerned, and it has not only grown into a custom, but a law, that banks generally take no notice of the notations made by the drawer of the check as to the purpose for which a check is given. This has been done to such an extent that many depositors practically keep their books on the face of their checks.

■■ In 9 C. J. S., Banks and Banking, § 332, at page 677, under the heading of "Memoranda on Checks" is the following:

"Generally the bank is not required to take notice of any notation or memorandum on the check appearing on the margin thereof made for the convenience or benefit of the maker, with respect to honoring such check or so as to restrict the bank's right to charge the maker's account with the amount thereof."

Many citations are then given, among them being one given by the appellant herein, *First National Bank* v. *School District No. 15,* 173 Minn. 383, 217 N. W. 366, 367, 56 A. L. R. 1369, and we quote just a line from that decision: "Such notations on a check, as between drawer and drawee, operate only to serve the convenience of the drawer."

We quote the following from the brief of appellee:

"The bank is further charged with notice of the rules and regulations of the bankruptcy law and is advised of the fact that moneys can only be withdrawn from the funds of the trustee in bankruptcy upon the joint signature of the trustee and referee."

And, also, appellee submits from 61 A. L. R. 1404 the following:

"In *Fidelity & D. Co.* v. *Queens County Trust Co.,* (1919) 226 N. Y. 225, 123 N. E. 370, . . . where a trustee

received several checks, some of which were payable to him personally and some to him as trustee, and one of which had been indorsed to him as 'Trustee in Bankruptcy for William Trist Baily, Bankrupt,' which checks were deposited in an account maintained by him as trustee, and where subsequently checks were drawn upon this account, countersigned by the clerk of a Federal District Court, and some of them bearing the notation, 'In re Wm. Trist Baily,' it was held that the bank in which such account had been maintained was, under all circumstances, chargeable with notice that the money deposited therein was the property of the bankrupt estate, and was accountable to the bankrupt estate, where such money had been misappropriated by the trustee through withdrawal thereof without authority, and deposit to his personal account in the same bank.''

If the check in question had been cashed at the bank on which it was drawn, the First National Bank of Arizona, it, of course, would have been all right. In that connection we quote from page 263 of 294 F. the case of *Commercial Sav. Bank & Trust Co.* v. *National Surety* Co., 6 Cir.:

''Fenton might have presented this check directly to the Northern National Bank, in which these funds were deposited, and that bank would have had no right to refuse payment in cash, or to inquire what the payee proposed to do with the money. . . . ''

In the case of *New Amsterdam Casualty Co.* v. *Robertson,* 129 Or. 663, 278 Pac. 963, 64 A. L. R. 1396, we quote the following paragraph from page 965 of 278 P.:

''In the instant case, the bank knew that the funds belonged to school district No. 106. The vital question is: Did it know that Robertson, the clerk, in transferring a portion of these funds to his personal account, intended to misappropriate them? Did this act, in and of itself, constitute notice to the bank of the wrongful diversion of public funds? True, the bank should have looked with suspicion upon such a trans-

action; but we are not prepared to say, as a matter of law, that it was obliged to make inquiry to ascertain whether the fiduciary was violating his trust. To do so would greatly incumber and hinder banking institutions in the transaction of legitimate business, by overburdensome restrictions. In the absence of notice to the contrary, the bank had the right to assume that Robertson was faithful to his trust.''

■ From the case of *Rogers* v. *Bankers' National Bank*, 179 Minn. 197, 229 N. W. 90, 92, submitted by appellant, we quote the following:

'' . . . We cannot agree to the contention that when one deposits funds in his personal bank account it must be regarded as equivalent to a declaration of intent to devote them to his personal ends.

''All authorities seem to agree that if the trustee cashed the check over the counter and misappropriated the money, liability of the bank would not follow. (Citing cases.) If they may safely pay him the cash, there is little reason to justify a refusal to give him a deposit credit. He may concededly cash the check at the drawee bank and deposit the cash in his own bank without imposing liability upon it for his breach of duty. To deposit the check for collection in his own bank is a shorter and more modern business-like method of accomplishing the same end (the propriety of which we do not consider) and we see no good reason, all things considered, for saying that that imposes a greater liability on the bank. Some authorities sustain our view in this particular. (Citing cases) Up to this point no conversion has been facilitated. Henderson was indorsee in the checks with power to collect them. His power was neither increased nor diminished by the form of the deposit. He held the legal title of the check whether subject to a trust or free from one. The trust and confidence imposed in the fiduciary is that extended to him by the one creating the trust or agency. It is not the bank.''

It is a great accommodation for the public to be able to carry a trustee account in the banks, but if the depositor had to be quizzed and scrutinized in handling

such funds and the bank had to use extreme caution, then a deposit of that kind would not be desirable to either the bank nor the depositor. Trust accounts are the means of distinguishing the individual funds of a depositor from the funds he carries for another. Such accounts are to be encouraged. But, by this we do not fail to recognize the necessity of a bank to know the law and to guard carefully such an account as the one in bankruptcy in this case.

Here is a case where the trustee was a lawyer, an "Arm of the Court," and under bond, and in this case he did not deposit in the bankruptcy account and then withdraw the same, and we are convinced that the bank is not liable.

The judgment is modified accordingly.

McALISTER, C. J., and ROSS, J., concur.