BOARD OF the COUNTY COMMISSION-ERS OF the COUNTY OF HOT SPRINGS, Appellant (Plaintiff below),

v.

FIRST NATIONAL BANK OF THERMOPOLIS, Appellee (Defendant below).

No. 3032.

Supreme Court of Wyoming.

Jan. 23, 1962.

Murane, Bostwick & McDaniel, Casper, for appellant.

W. J. Wehrli, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case the Board of County Commissioners of the County of Hot Springs, as plaintiff, brought an action against the First National Bank of Thermopolis as defendant and alleged in substance as follows: Ralph Noble, a duly elected and acting county treasurer of Hot Springs County, defaulted in his accounts as county treasurer which resulted in a shortage to the County of Hot Springs, Wyoming, in the amount of $109,227.88. During that period the defendant, First National Bank of Thermopolis, was negligent in handling transactions with the said Ralph Noble that resulted in a loss to the county of $88,285.16. During that time the defendant, First National Bank of Thermopolis, was the official depositary for funds in Hot Springs County. Said Ralph Noble, county treasurer, presented to the bank certain checks payable to the treasurer of Hot Springs County made by taxpayers but he did not deposit the same and received cash therefor from said bank. "That said bank was negligent and careless in the operation of its banking practices as official depository of funds for said County, and as a bank generally, in giving cash to the said Ralph Noble as an individual upon acceptance of checks payable to the Treasurer of Hot Springs County. Particularly, said Defendant was negligent and careless in handling the following transactions."

Here the complaint sets out some thirteen checks, the first dated September 14, 1951, and the last dated May 10, 1958, and a government bond in the sum of $2,892, which was payable to a school district. Plaintiff accordingly prays judgment against the defendant in the sum of $88,-285.16.

Thereupon defendant bank filed a motion to dismiss the complaint on the ground and for the reason that it fails to state a claim upon which relief can be granted against the defendant. The motion was sustained on October 10, 1960, but plaintiff was given twenty days in which to amend its complaint. No amendment was made and judgment therefore was rendered in favor of the defendant and against the plaintiff on November 23, 1960, dismissing the complaint with prejudice. From that judgment the plaintiff has appealed.

The plaintiff and appellant herein will hereafter be mentioned as plaintiff and the First National Bank of Thermopolis will be referred to as the defendant or defendant bank.

The plaintiff herein through its counsel contends that the defendant bank is liable by reason of the provisions of § 9-606, W.S.1957, which insofar as is pertinent herein is as follows:

"Every county treasurer, city treasurer, town treasurer, treasurer of a school district, and treasurer of an irrigation district or drainage district, within the State of Wyoming shall deposit, and at all times keep on deposit for safekeeping, in banks incorporated under the law of this state and in national banks doing business in his county when designated as depositories by the proper governing board the amount of moneys in his hands collected and held by him as such treasurer. Any such bank, located in such county, may apply for the privilege of keeping such moneys upon the following conditions: All such deposits shall be subject to payment when demanded by the proper treasurer on his check, order or demand * * *."

Counsel for appellant summarizes his arguments as follows:

"In conclusion we submit that the bank was negligent from time to time through the actions of its tellers in releasing funds to Mr. Ralph Noble in varying amounts as indicated in the Complaint when the bank had knowledge of the statute concerning the deposit of funds by a Treasurer and of ownership of the funds were [sic] involved.

"It would seem that the County should recover or at least have the opportunity of a day in Court presenting evidence against the designated depository who made it possible for the County Treasurer to embezzle. The bank should have required these funds to be run through its records. For the bank to be able to hide behind the Uniform Fiduciary Act or the Uniform Negotiable Instruments Act, both of which are founded in contract, when it has been guilty of a tort would seem to reach an unjust conclusion in this matter. * * *"

Counsel for appellant has not pointed out in the foregoing, any more than in the complaint herein, any act of negligence except as therein mentioned which consists, as he states, of the fact that the funds were not deposited in the bank, although they should have been under the statute above mentioned. He concedes, or apparently concedes, that if the funds had been deposited in the defendant bank and then the amounts had been withdrawn as authorized by § 9-606, the bank would not be liable herein. In that admission counsel is well sustained by the authorities. See for instance New Amsterdam Casualty Co. v. First Nat. Bank in Oklahoma, 144 Okl. 180, 289 P. 749; New Amsterdam Casualty Co. v. Robertson, 129 Or. 663, 278 P. 963, 64 A.L.R. 1396; Valley Nat. Bank v. American Employers Ins. Co., 60 Ariz. 407, 138 P.2d 294; Fidelity & De-

posit Co. of Maryland v. Citizens State Bank, 104 Ind.App. 332, 11 N.E.2d 52, and other cases cited by counsel for the defendant herein. But to say that a bank is not liable if the deposit is made and then immediately withdrawn but that liability results if the deposit is not made is a distinction too fine to deserve serious consideration. We may presume, we think, that the checks involved in the case at bar were executed in the usual manner, directing the bank to "pay to the order of", etc. The bank thus directed to pay as ordered might have been, in case of refusal to comply, liable in damages to the party issuing the check who had sufficient funds to cover the check. The bank was under the duty to pay as directed. In Commercial Sav. Bank & Trust Co. v. National Surety Co., 6 Cir., 294 F. 261, 263, the court, speaking of a check issued to one Fenton as receiver, directed to the Northern National Bank, said: "Fenton might have presented this check directly to the Northern National Bank, in which these funds were deposited, and that bank would have had no right to refuse payment in cash, or to inquire what the payee proposed to do with the money." In the case of American Surety Co. of New York v. First Nat. Bank in West Union, W. Va., 4 Cir., 141 F.2d 411, 418, certiorari denied 322 U.S. 754, 64 S.Ct. 1267, 88 L.Ed. 1583, the court stated:

" * * * Where cash is paid to a trustee in bankruptcy in exchange for a check indorsed by him in that capacity, and where, as here, there is no showing that the one cashing the check is attempting to aid the trustee in misappropriating the funds or knows of any intended misappropriation on his part, there is no basis in law or in reason upon which liability on the part of the bank cashing it can be asserted. Commercial Savings Bank & Trust Co. v. National Surety Co., 6 Cir., 294 F. 261. * * *"

The court in Rodgers v. Bankers' Nat. Bank, 179 Minn. 197, 229 N.W. 90, 92, stated: "All authorities seem to agree that if the trustee cashed the check over the counter and misappropriated the money, liability of the bank would not follow."

The statute above cited imposes the duty upon the county treasurer and upon no one else to deposit and keep on deposit the money collected by him. It imposes no duty on the depositary bank (aside from that of paying interest) except to pay the money deposited on the check or order of the county treasurer. A case close in point in this connection is Manufacturers' Trust Co. v. United States Mortgage & Trust Co., 122 Misc. 726, 204 N.Y.S. 105 (affirmed 213 App.Div. 345, 210 N.Y.S. 613), involving a statute forbidding a trustee to mingle trust funds with his own and making it a crime to do so. The court held that the duty so imposed on the trustee did not impose any liability upon other persons in cases in which no liability existed previously. The court said in part at 204 N.Y.S. 110:

"Had the Legislature intended to place additional responsibility upon depositaries it would have so stated. This additional responsibility cannot be placed by implication. If banking institutions are to be charged with notice of conversion or intended conversion, rendering them liable for the criminal acts of their depositors, when checks are drawn or deposited by fiduciaries under the conditions disclosed in this case, it should be done by an act of the Legislature, concerning which there can be no ambiguity. * * *"

In re Johnson's Estate and Guardianship, 78 Wyo. 173, 320 P.2d 429, 322 P.2d 145, 72 A.L.R.2d 745, and American Bonding Co. of Baltimore v. National Mechanics' Bank of Baltimore, 97 Md. 598, 55 A. 395, 99 Am.St.Rep. 466, cited by counsel for the plaintiff herein, are not in point.

We think, accordingly, that no liability of the defendant bank herein can be predicated upon the statutory provision above considered.

Even if it were otherwise, we would still be required to consider the provisions of the Uniform Fiduciaries Act enacted in this state, embodied in §§ 4–1 to 4–15, W.S. 1957. Section 9–606 was enacted substantially as it is now in 1907. The Uniform Fiduciaries Act was enacted in this state in 1929 by Ch. 90 of the Session Laws of that year. Section 15, Ch. 90, S.L. of Wyoming, 1929, provided that "All acts and parts of acts inconsistent with this Act are hereby repealed." Hence, in case of conflict the latter act is controlling. The Uniform Fiduciaries Act appears in W.S.1957, pertinent sections of which are quoted as follows:

"§ 4–3. Responsibility of person transferring money or property to fiduciary.—A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary."

"4–5. Liability of indorsee when negotiable instrument indorsed by fiduciary.—If any negotiable instrument payable or indorsed to a fiduciary as such is indorsed by the fiduciary, or if any negotiable instrument payable or indorsed to his principal is indorsed by a fiduciary empowered to indorse such instrument on behalf of his principal the indorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in indorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is trans-

ferred by the fiduciary in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is transferred in any transaction known by the transferee to be for the personal benefit of the fiduciary, the creditor or other transferree is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in transferring the instrument."

"§ 4–10. Liability of bank receiving deposit from fiduciary.—If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."

Certain sections of the Uniform Fiduciaries Act were repealed by the legislature in 1961 (Ch. 219, S.L. of Wyoming 1961) but at the time of the action herein the entire act was in force and effect.

■ The Uniform Fiduciaries Act was enacted to establish uniform and definite rules in place of the diverse and indefinite

rules then prevailing concerning breaches of fiduciary obligations and to remove undesirable barriers imposed by court decisions on those dealing with fiduciaries. See Colby v. Riggs Nat. Bank, 67 App. D.C. 259, 92 F.2d 183, 114 A.L.R. 1065. The statement in 3 Scott, Trusts, p. 2341 (2d Ed.), is quite apropos herein. The author states:

"It is easy to sit down at leisure after the event and to see how a cautious and inquiring banker might have discovered the depositor's misconduct. It would not require the acumen of a Sherlock Holmes to follow the clues which may have been afforded. But should bankers be turned into detectives in order to prevent depositors from acting in violation of their obligations to third persons? * * *"

It is readily seen that if a bank were liable under facts such as disclosed by the complaint before us no bank could afford to be a depositary of public funds; in fact, no bank could afford to have any dealings with any fiduciary. The hazard would be too great, even if the bank should employ expert tellers. The rule limiting liability of banks dealing with fiduciaries is to a more or less extent based upon public policy. That appears in several of the cases cited by counsel for the defendant bank herein. In the case of Rodgers v. Bankers' Nat. Bank, supra, which discussed the subject before us at considerable length, a fiduciary deposited checks belonging to him in his capacity as fiduciary to his personal account and embezzled the money. The court, holding the bank not liable even in the absence of legislation like the Uniform Fiduciaries Act, said in the course of the opinion at 229 N.W. 92, 93:

"* * * The question must be determined in relation to the general security and the public welfare. Banks are in effect fiscal agents of the government. They are essential to the business interests of our state. They operate under government supervision. The public has a keen interest in their successful operation and in their facilities for public service. They aim to afford the public a place for the safe-keeping of one's money. While regulation must be and is strict and exacting, unreasonable and unjust rules inconsistent with the efficient and safe conduct of the bank are not to be imposed. * * *

* * * * * *

"* * * The rule of liability is not practicable. The banker cannot be expected to exercise the same vigilance in transactions wherein he has no pecuniary interest as where he has. * * *"

In New Amsterdam Casualty Co. v. Robertson, supra, the court said in part at 278 P. 965:

"* * * we are not prepared to say, as a matter of law, that it [the bank] was obliged to make inquiry to ascertain whether the fiduciary was violating his trust. To do so would greatly incumber and hinder banking institutions in the transaction of legitimate business, by overburdensome restrictions. In the absence of notice to the contrary, the bank had the right to assume that Robertson was faithful to his trust."

See also General Cas. Co. of America v. Seattle-First Nat. Bank, 42 Wash.2d 433, 256 P.2d 287, 291. In Aetna Casualty & Surety Co. v. Catskill Nat. Bank & Trust Co., 2 Cir., 102 F.2d 527, 529, the court said in part, "The bank is obliged by contract and business necessity to honor checks promptly, and has neither the time nor the facilities to act as detective on the conduct of depositors."

The cases involving the liability of parties dealing with fiduciaries are very numerous and consider numerous different situations. The subject is treated at length in 3 Scott, Trusts, §§ 324–324.5 (2d Ed.). See also 4 Bogert, Trusts and Trustees, § 901 (1948) and subsequent sections; and an annotation on the Uniform Fiduciaries

Act is found in 114 A.L.R. 1088. The attitude of the courts in relieving banks from too great a responsibility is well illustrated in Colby v. Riggs Nat. Bank, supra. In that case it was held that where a trustee had an account as trustee in a bank and drew a check payable to himself individually and deposited it in his personal account in the bank and thereafter drew a check on his personal account and gave it to the bank in payment of his personal indebtedness to the bank, the bank was not liable to the beneficiaries of the trust if it did not have actual knowledge that he was committing a breach of trust and did not act in bad faith. 3 Scott, Trusts, p. 2344 (2d Ed.). Scott also states at p. 2322 that "The question which causes most difficulty is what is sufficient to charge the bank with notice of a breach of trust committed by the trustee. To what extent and under what circumstances is the bank under a duty to make inquiry whether the trustee is committing a breach of trust?"

We shall limit our further discussion herein by examining some of the provisions of the Uniform Fiduciaries Act above quoted and some cases which seem to have a direct bearing on the facts before us.

Section 4-3, W.S.1957, part of our Uniform Fiduciaries Act, speaks of a person paying money to a fiduciary. The term "person" includes, we think, a corporation such as a bank. See § 4-2, W.S. 1957; General Cas. Co. of America v. Seattle-First Nat. Bank, supra. If such person or corporation pays in good faith money to a fiduciary, which the fiduciary is entitled to receive, the paying party is not responsible for defalcation on the part of the fiduciary. That in substance is the meaning of the act and would seem to plainly cover the situation in the case at bar since the county treasurer was entitled to receive the money. Section 4-5 covers a case of negotiable instruments. The checks given the county treasurer in the case at bar doubtless were negotiable instruments. The section provides in part that if any negotiable instrument is payable to a fiduciary and is indorsed by him the indorsee (the bank in this case) is not responsible, with certain exceptions, for any breach of duty by the fiduciary. Payment by the indorsee is but an incident of the indorsement so that this section too would seem to cover a situation such as presented in this case. The exceptions are that the indorsee must act in good faith, must be without knowledge, actual or constructive, of any breach of duty on the part of the fiduciary, and must not receive any personal gain by reason of any misappropriation. In the case at bar, payments were made by the bank to the fiduciary so that the only question here seems to be as to whether or not the bank acted in good faith or, on the other hand, acted so as to come within one of the exceptions mentioned above. The plaintiff, evidently after argument in court as to the law of the case, was given the opportunity to allege facts as to any of the above exceptions but failed to do so. The complaint herein does not charge that the defendant bank acted in bad faith or had any knowledge of any breach of trust on the part of the fiduciary or received any personal gain by reason of the embezzlement on the part of the fiduciary. It merely alleges that the bank acted negligently and carelessly in paying the money. We take it that the term "careless" is but a synonym for negligent. So we must consider that phase of the case.

That a man dealing with a fiduciary cannot in the absence of bad faith be held responsible for mere neglect in discovering and preventing misappropriation by the fiduciary is supported by ample authority.

The Uniform Fiduciaries Act is in force in Pennsylvania, and the court in Davis v. Pennsylvania Co. for Insurances on Lives and Granting Annuities, 337 Pa. 456, 12 A.2d 66, 68, 69, considering that act, said in part:

"* * * The words 'bad faith' are not defined in the act, but section

1(a), 20 P.S. § 3311(1) (a), states that 'A thing is done "in good faith," within the meaning of this act, when it is in fact done honestly, whether it be done negligently or not.' Since 'bad' is the antonym of 'good', it follows that a thing is done in bad faith, within the meaning of the act, only when it is done dishonestly and not merely negligently.

\* \* \* \* \* \*

"At what point does negligence cease and bad faith begin? The distinction between them is that bad faith, or dishonesty, is, unlike negligence, wilful. The mere failure to make inquiry, even though there be suspicious circumstances, does not constitute bad faith (Union Bank & Trust Co. v. Girard Trust Co., 307 Pa. 488, 500, 501, 161 A. 865), unless such failure is due to the deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a vice or defect in the transaction, —that is to say, where there is an intentional closing of the eyes or stopping of the ears."

The ruling of the foregoing case was followed in Roswell State Bank v. Lawrence Walker Cotton Co., 56 N.M. 107, 240 P.2d 1143, in which the court quotes from the Pennsylvania case at great length. Again in the case of Transport Trucking Company v. First National Bank in Albuquerque, 61 N.M. 320, 300 P.2d 476, 479, the court emphasizes the fact that the vital question in connection with dealings with fiduciaries is whether such dealings are in good or bad faith, the court saying in part:

"The sections of the Fiduciary Act mentioned and other sections of the Act indicate exculpation or the relieving of a bank when it is sought to be charged by a fiduciary's principal. The Act provides that the bank may be chargeable when its action in receiving the deposit or paying the check amounts to bad faith, such action of the bank must be willful and even though there be suspicious circumstances, the failure to make inquiry does not constitute bad faith on the part of the bank. The purpose of the Uniform Fiduciary Act was to facilitate banking transactions by relieving a depository, acting honestly, of the duty of inquiry as to the right of its depositors, even though fiduciaries, to check out their accounts.

"Roswell State Bank v. Lawrence Walker Cotton Co., Inc., 56 N.M. 107, 240 P.2d 1143; Davis v. Pennsylvania Co., 337 Pa. 456, 12 A.2d 66; Colby v. Riggs National Bank, 67 App.D.C. 259, 92 F.2d 183, 114 A.L.R. [1065] 1088."

The foregoing cases refer to the definition of good faith in the Uniform Fiduciaries Act. The same definition is contained in § 4–2, W.S.1957. In Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 8 N.E.2d 895, 907, the court defined bad faith and stated: " 'Bad faith' is a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud." In the case of All v. McComas, 162 Md. 690, 161 A. 187, it appears that an executor, Wattenscheidt, sold a drug business of the decedent. The purchasers paid in checks but some of the checks were not made payable to Wattenscheidt as executor. Wattenscheidt embezzled the money received from these checks and the purchasers of the drug business were sought to be held liable for that misappropriation because of their failure to make the checks payable to Wattenscheidt as executor. A demurrer to the petition was filed and sustained. The court of appeals upheld this ruling. It cited a section of the Uniform Fiduciaries Act [Code Supp.1939, art. 37A, § 2] which is the same as § 4–3,

W.S.1957, and concluded at 161 A. 189: "With no charge of bad faith on the part of the appellees and none that they were on notice of the intended misuse of funds by the executor and trustee with whom they dealt, and no failure of duty by them, we think the action of the chancellor in sustaining the demurrers in these cases was proper."

In the case of National Casualty Co. v. Caswell & Co., 317 Ill.App. 66, 45 N.E.2d 698, 699, it appears that a check was issued to Franklin J. Kester individually when it should have been issued to him as trustee. He embezzled the amount of the check and the surety company paying the money sought reimbursement from the company issuing the check. Defendant claimed that it could not be held responsible for the embezzlement. It moved to dismiss the complaint and the action. The action was dismissed. The complaint charged that making the check payable to Franklin J. Kester individually was "a careless, negligent and wrongful act". The court stated that these words were not the equivalent of bad faith. "Bad faith imports a dishonest purpose and implies wrongdoing through some motive of self-interest." The court, citing some cases, concluded at 45 N.E.2d 701:

> "In Scott on Trusts, vol. 2, sec. 297.-6, it is said that one is not chargeable with notice of a breach of trust unless he has actual knowledge of the breach or knowledge of such fact as amounts to bad faith in purchasing the property from the trustee. The author says 'It would seem that the mere fact that the transferee is negligent in failing to learn of the breach of trust is not enough to charge him with notice unless he acts in bad faith.' The complaint does not allege any knowledge or facts showing bad faith by the defendant in purchasing the certificate of deposit.

> "Counsel for the defendant properly says that if plaintiff's theory were followed to its ultimate conclusion no person could deal with a trustee except at his own peril. The enactment of the Fiduciary Obligations Act was to maintain the value of a trust and to protect those who innocently and in good faith deal with trustees. As was said in Colby v. Riggs Nat. Bank, 67 App.D.C. 259, 92 F.2d 183, 198, 114 A.L.R. 1065, the act 'relaxes some of the harsher rules which require of a bank and of individuals the highest degree of vigilance in the detection of a fiduciary's wrongdoing.'"

The ruling of the foregoing case was followed in Callahan v. Holsman, 351 Ill. App. 1, 113 N.E.2d 483.

We see no reason why we should disagree with these authorities and the judgment of the trial court is accordingly affirmed.

Affirmed.