Filed 11/19/24

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-02712

| Vaughn Comeau v. North Country Federal Credit Union |
| --- |

## DECISION ON MOTION TO DISMISS

Plaintiff Vaughn Comeau, in his role as court-appointed guardian of Everett Northup, sues Defendant North Country Federal Credit Union ("NCFCU"), the depository where Mr. Northup's prior guardians (his parents) opened a guardianship account. Mr. Comeau alleges negligence and breach of the consumer protection act in NCFCU's failure to prevent the prior guardians from breaching their fiduciary duty and draining the guardianship account. NCFCU moves to dismiss. The court grants the motion.

The Complaint alleges that Everett Northup was born with substantial and permanent physical and mental impairments. His parents filed a medical malpractice lawsuit on his behalf, resulting in the payment of settlement proceeds to Everett. The Probate Division appointed the parents as financial guardians in February 2016, and ordered them to deposit any cash resources Everett owned into a guardianship account. The Appointment Order required the parents to obtain court approval for expenditures from the guardianship account.

The parents opened a guardianship account at a branch office of NCFCU in February 2016; the owner of the account was listed as "Everett L Northrup Guardianship." The parents listed themselves as "Authorized Signers" and provided NCFCU with a copy of the Appointment Order. They deposited $175,490.52 into the guardianship account on or around February 29, 2016. By April 21, 2017, they had withdrawn the entire balance, without obtaining court approval.

In July 2023, the probate court removed Everett's parents as his financial guardians and appointed Mr. Comeau in their place. Mr. Comeau now asserts that NCFCU owed Everett a duty to prevent unauthorized withdrawals or expenditures from the guardianship account and that it breached this duty by allowing his parents to withdraw the entire balance without requiring proof of the probate court's approval. He asserts also that NCFCU engaged in deceptive acts or practices, in violation of the Vermont Consumer Protection Act ("VCPA"), by holding itself out as an institution where Everett's

account would be safe from unapproved withdrawals and by failing to disclose that it lacked organizational protocols to safeguard funds deposited into guardianship accounts.

In its motion, NCFCU relies on the Account Authorization Card that the parents signed when they opened the guardianship account to argue that it is protected from liability.[1] Everett's parents listed themselves as "Authorized Signers." The section entitled "Certificate of Authority" includes the following relevant provisions:

> 2. Authorized Signers. The officers, authorized agents, or trustees, as applicable, signing in the "AUTHORIZED SIGNERS" section (Signers) presently occupy the positions shown and are authorized to transact business on behalf of the Member/Owner. Each Signer agrees to notify the Credit Union in writing of any change in authority. The Credit Union may request any other evidence of Signer's authority at any time.

> 3. Authority.
>
> . . .
>
> b. The Credit Union is directed to accept and pay *without further inquiry* any item, bearing the appropriate number of signatures as indicated in the "AUTHORIZED SIGNERS" section, drawn against any of the Member/Owner's accounts. Unless otherwise indicated, any one Authorized Signer is expressly authorized to endorse all items payable to or owned by the Member/Owner for deposit with or collection by the Credit Union and to execute such other agreements and to perform any other transaction under the agreement.

> c. The authority given to the Authorized Signers . . . shall remain in full force until written notice of revocation is delivered to and received by the Credit Union at each location where an account is maintained. . . . *The Credit Union shall have no duty to inquire as to the powers and duties of any Signer and shall have no notice of any breach of fiduciary duties by any Signer unless the Credit Union has actual notice of wrongdoing.*
>
> . . .

> 4. Liability. *Member/Owner and each Signer agree to indemnify and hold the Credit Union harmless of any claim or liability as a result of unauthorized acts of any Signer or former Signer or acts of any Signer upon which the Credit Union relies prior to notice of any account change or change of Member/Owner. The Member/Owner agrees that the Credit Union shall not be liable for any losses due to the Member/Owner's failure to notify the*

---

[1] The court may consider the Account Authorization Card in ruling on the motion to dismiss because Mr. Comeau relies on it to support his claims for relief, and the interpretation of its terms is central to the resolution of the motion. *See Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 13, 198 Vt. 204 ("Where pleadings rely upon outside documents, those documents 'merge[ ] into the pleadings and the court may properly consider [them] under a Rule 12(b)(6) motion to dismiss.' " (quoting *Kaplan v. Morgan Stanley & Co.,* 2009 VT 78, ¶ 10 n.4, 186 Vt. 605 (mem.) (internal quotation omitted)).

> *Credit Union of such changes.*

Exhibit A to Motion; Exhibit B to Opposition (emphasis added).

In signing the Account Authorization Card, the parents entered into a binding contract. That contract precludes the claims asserted here. "[C]ontract terms are interpreted by first looking at their plain language" and enforcing the terms "as written." *In re Miller*, 2024 VT 35, ¶ 13 (citing *In re West*, 165 Vt. 445, 450 (1996)). "[W]hen the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms." *In re Grievance of Verderber*, 173 Vt. 612, 615 (2002) (mem.) (citation omitted).

Mr. Comeau contends that NCFCU "fail[ed] to apply clear restrictions on withdrawals from Everett's guardianship account of which [ NCFCU] had actual notice from the day that the account was opened." Opposition at 3. This argument ignores the plain language of the Account Authorization Card. That language makes clear that NCFCU was obligated "to accept and pay *without further inquiry* any item, bearing the appropriate number of signatures as indicated in the "AUTHORIZED SIGNERS" section, drawn against any of the Member/Owner's accounts." (Emphasis added). Were this language not sufficiently clear, the contract goes on to emphasize that NCFCU "shall have *no duty to inquire as to the powers and duties of any Signer* and shall have no notice of any breach of fiduciary duties by any Signer unless the Credit Union has actual notice of wrongdoing." (Emphasis added.)

Mr. Comeau relies on a section of the Account Authorization Card indicating that NCFCU reviewed a "Court Document." The Complaint sufficiently alleges that NCFCU received a copy of the Probate Division's order of appointment. This does not mean, however, that NCFCU was under any obligation to ensure that Everett's parents complied with the terms of that order; in fact, the Account Authorization Card expressly negates any such duty. Mr. Comeau does not allege that NCFCU was given written notice, before the account was depleted, that Everett's parents had been removed as financial guardians—nor can he, as it is a matter of record that they remained as guardians well past the time when they had drained the account. Unless or until NCFCU was so notified, it was contractually obligated "to accept and pay without further inquiry any item, bearing the appropriate number of signatures as indicated in the 'AUTHORIZED SIGNERS' section, drawn against any of the Member/Owner's accounts."

Mr. Comeau does not allege that any court order was directed towards NCFCU requiring it to follow the terms of any order directed to Everett's parents. Indeed, the record of the Probate Division's proceeding (of which the court can properly take judicial notice) establishes that there was no such order. Rather, the one order that did issue was directed not at any depository institution but the

guardians. Moreover, Mr. Comeau does not assert that NCFCU was even aware of the particulars of that order other than possibly the fact that Everett's parents were named as his financial guardians and, therefore, authorized signers on the guardianship account. As another court stated many years ago,

> "[W]e are not prepared to say, as a matter of law, that it [the bank] was obliged to make inquiry to ascertain whether the fiduciary was violating his trust. To do so would greatly incumber and hinder banking institutions in the transaction of legitimate business, by overburdensome restrictions. In the absence of notice to the contrary, the bank had the right to assume that [the fiduciary] was faithful to his trust."

*Bd. of Cnty. Comm'rs of Cnty. of Hot Springs v. First Nat'l Bank of Thermopolis*, 368 P.2d 132, 137 (Wyo. 1962) (quoting *New Amsterdam Cas. Co. v. Robertson*, 278 P. 963, 965 (Ore. 1929)); *see also Aetna Cas. & Sur. Co. v. Catskill Nat'l Bank & Trust Co.*, 102 F.2d 527, 529 (2d Cir. 1939) (A bank "has the right to assume that in withdrawing money from his account the depositor will deal lawfully with the trust funds . . . and [it] has neither the time nor the facilities to act as detective on the conduct of depositors."); *Robertson*, 278 P. at 965 (bank is not trustee of public funds and would have been liable upon its failure to honor depositor's checks).

Finally, the liability provision of the Account Authorization Card clearly and unambiguously provides that the Member/Owner—the guardianship, now in the person of Mr. Comeau—is obligated to indemnify and hold NCFCU harmless "of any claim or liability [1] as a result of unauthorized acts of any Signer or former Signer . . . [2] prior to notice of any account change or change of Member/Owner." Arguably, this provision operates not only to bar this suit, but to obligate Mr. Comeau to indemnify NCFCU for its attorney's fees and costs in defending against this suit. In the former regard, Mr. Comeau's argument against dismissal is based on a crabbed reading of the provision that ignores plain language and violates basic principles of grammar. Notwithstanding his arguments, it is clear (1) that the claims here result from "unauthorized acts of the signers," and (2) that those acts occurred before NCFCU had any "notice of any account change or change of owner" (of which there was none until Mr. Comeau became guardian). The point here is simple: unless and until NCFCU received "notice of any account change or change of owner," it was bound to honor any payment request made by any authorized signer; equally, unless and until NCFCU received such notice, the Member/Owner remained obligated to hold NCFCU harmless against any claim that the signer had acted without authority. The claims are thus barred. The court need not address the indemnification issue, as NCFCU has not raised it. Instead, it suffices to observe that the duty to hold harmless precludes the claims asserted here.

The foregoing analysis forecloses any recovery on Mr. Comeau's claim for breach of duty. *A priori,* it precludes any claim for violation of the Consumer Protection Act. There can be no claim, as asserted here, that NCFCU "engaged in deceptive acts or practices" by "holding itself out as an institution at which Child's money deposited in a guardianship account would be safe from unapproved withdrawals" or "failing to disclose a lack of organizational protocols to safeguard funds deposited into the guardianship account or guardianship accounts generally." Mr. Comeau acknowledges in his Opposition that his allegations in this regard are what would  commonly be referred to as "puffery." First he suggests that "NCFCU, which is a credit union offering consumer banking services, inherently represented to Everett through its very existence that it would safeguard Everett's money." Resp. in Opp. to Mot. to Dismiss at 9. He goes on to assert that "[w]hile it is unlikely that any NCFCU employee expressly stated that Everett's money would be safe from unauthorized withdrawal on the date the guardianship account was opened, that promise is so obvious, or commonsensical, that it is inherently made when a bank or credit union agrees to accept a deposit from a consumer." *Id.* These epitomize the kind of "conclusory allegations or legal conclusions masquerading as factual conclusions" that a court is not bound to accept on a motion to dismiss. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1 (additional quotation marks and citation omitted). Thus, these allegations are insufficient to withstand a motion to dismiss, particularly where the account agreement clearly negates any such undertaking.

## ORDER

The court grants the motion. All claims are dismissed with prejudice.

Electronically signed pursuant to V.R.E.F. 9(d): 11/19/2024 12:13 PM

_____
Samuel Hoar, Jr.
Superior Court Judge